FILED
06/29/2020
Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
Assigned on Briefs April 1, 2020

## DAVID NEW v. LAVINIA DUMITRACHE ET AL.

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Shelby County**
**No. CH-16-0804    JoeDae L. Jenkins, Chancellor**

_____

**No. W2017-00776-SC-R11-CV**

_____

A general sessions court entered a one-year order of protection prohibiting the plaintiff from having contact with the defendants, who are the plaintiff's ex-wife and the couple's minor child. The plaintiff failed to appeal the order within ten days as required by statute. Forty-two days later, he filed a document in the chancery court titled "Petition to Enroll and Certify A Foreign Judgment and Appeal in Nature of Writ of Error." The plaintiff attached to his pleading an incomplete copy of the couple's 2008 Texas divorce decree that granted him parenting time with the minor child and asked the chancery court to hold a new hearing and determine whether the general sessions court erred by issuing the order of protection. The plaintiff later filed a motion asking for interim parenting time with the child. The defendants filed a notice of limited appearance, and among other things, asked the chancery court to dismiss the action for lack of personal and subject matter jurisdiction. They also requested attorney's fees and costs incurred in defending the action, relying on statutes to support these requests. The chancery court dismissed the action for lack of subject matter jurisdiction, finding the appeal untimely and the method of appeal obsolete, and also determining that the petition for enrollment was defective on its face because the defendant had attached an incomplete copy of the Texas decree. The chancery court initially denied the defendants' request for attorney's fees and costs but granted their motion to alter or amend and ultimately awarded attorney's fees and costs totaling $25,398.21. The plaintiff appealed, challenging only the award of attorney's fees. The defendants asked for an award of attorney's fees incurred on appeal. Before reaching these issues, however, the Court of Appeals sua sponte held that the chancery court erred by dismissing the appeal for lack of subject matter jurisdiction, ruling that the "writ of error remains an avenue for review of

judgments of general sessions courts." Rather than remanding the matter to the chancery court for consideration of the merits of the plaintiff's writ of error appeal, however, the Court of Appeals also addressed the defendants' challenge to the award of attorney's fees. The intermediate appellate court ruled that a statute authorized the chancery court to award the defendants' attorney's fees for defending against the plaintiff's writ of error appeal but not for fees incurred defending against the plaintiff's petition to enroll the Texas divorce decree. As a result, the Court of Appeals vacated the award of attorney's fees and remanded to the chancery court for a hearing and a determination of the fees incurred solely in defense of the plaintiff's writ of error appeal. The Court of Appeals denied the defendants' request for attorney's fees on appeal. This Court granted the defendants' application for permission to appeal. We hold that the chancery court correctly concluded that the writ of error is no longer a viable method of appeal in this State and dismissed the untimely appeal for lack of subject matter jurisdiction. We also hold that the chancery court correctly dismissed the plaintiff's request to enroll the Texas decree because he provided an incomplete copy of the decree. Finally, we hold that the chancery court correctly awarded the defendants' attorney's fees for defending against the plaintiff's pleading and did not err by failing to limit the award to the writ of error appeal. For these reasons, we reverse the judgment of the Court of Appeals, reinstate the judgment of the chancery court in its entirety, and remand to the chancery court for a determination of the reasonable attorney's fees the defendants have incurred and should be awarded for this appeal.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed and Judgment of the Trial Court Reinstated; Case Remanded**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Valerie T. Corder, Memphis, Tennessee, for the appellants, Lavinia Dumitrache and A.N., a minor.

Robert Alan Wampler, Memphis, Tennessee, for the appellee, David New.

## OPINION

## I. Factual and Procedural Background

On October 7, 2008, David New ("Father") and Lavinia Dumitrache ("Mother") were divorced in Texas.[1] Among other things, the final decree approved an agreed parenting plan for the parties' minor child, who was born September 16, 2006. After the divorce, Mother and the minor child moved to Tennessee, and Father moved to Mississippi.

In November 2015, Mother and the minor child petitioned the General Sessions Court for Shelby County, Tennessee, for orders of protection against Father.[2] On March 30, 2016, after a ten-hour hearing at which several witnesses testified and several exhibits were introduced, the general sessions court issued an order of protection for Mother and the minor child prohibiting Father from having contact with them.[3] On April 6, 2016, the general sessions court entered a supplemental order awarding Mother and the minor child[4] attorney's fees and discretionary costs totaling $8,109.50.

A statute provides that "[a]ny appeal from a final ruling on an order of protection by a general sessions court . . . shall be to the circuit or chancery court of the county. Such appeal shall be filed within ten (10) days and shall be heard de novo[.]" Tenn. Code Ann. § 36-3-601(3)(F) (Supp. 2019).[5] Father did not file an appeal within ten days. However, on May 12, 2016, forty-two days after the issuance of the order of protection and thirty-six days after issuance of the order awarding Mother attorney's fees, Father filed in the Chancery Court for Shelby County a document titled "Petition to Enroll and

---

[1] The record does not reflect the date the parties married.

[2] The petition is not in the record on appeal.

[3] The order of protection also is not included in the record on appeal. However, the record reflects that the general sessions court issued a single order of protection referring to both Mother and the minor child.

[4] We identify the minor child by initials only to protect the child's privacy and refer to Mother and the minor child collectively as "Mother."

[5] Unless otherwise indicated, this opinion cites to the current version of statutes because the relevant statutory text has not changed in a significant way since this matter began in the trial court.

Certify a Foreign Judgment and Appeal in Nature of Writ of Error" (hereinafter "Petition and Writ of Error"). Father asked the chancery court to "certify and enroll" the Texas divorce decree under the Uniform Enforcement of Foreign Judgments Act. See id. §§ 26-6-101 to -109 (2017 & Supp. 2019). Father also sought an appeal "in the nature of a Writ of Error, pursuant to T.C.A. 27-6-101 et seq." Father alleged that he had "requested of his counsel that the judgment of the [g]eneral [s]essions [m]agistrate be appealed within the time prescribed by law, however the appeal was never filed." Father asked the chancery court to "make a determination after a full hearing, as to whether in fact a Protection Order should have issued, and if so, the duration of same and to resolve the conflict with the Texas decree . . . as to how, when, and where [Father] should have parenting time with his minor child." Father contended that the order of protection

> effectively completely curtail[ed] [Father from] any parenting time . . . with his minor child and conflict[ed] with the prior orders of the Texas Court regarding [Father's] parenting time with the minor child, although the [general sessions court] did not adjudicate parenting time or custody in the [order of protection] . . . nor did the [general sessions court] make any exceptions in the [order of protection] for [Father's] parenting time.

Father also urged the chancery court to set aside the general sessions court's order awarding Mother's attorney's fees. Father asserted that Mother's counsel "should be ordered to file her affidavit for attorney fees and expenses along with a copy of her client's contract of employment[,] and[,] thereafter, [Father] should be afforded the opportunity to file countervailing affidavits as to the reasonableness and necessity of the hourly rate charged and the time expended" so that the chancery court could "determine reasonable counsel fees and expenses."

In his prayers for relief, Father asked the chancery court to conduct "a hearing de novo" on Mother's "application for a [p]ermanent [o]rder of [p]rotection[]" and "after such hearing dismiss said [p]etition." Alternatively, Father asked the chancery court to

> set the parameters for [Father's] parenting time with this minor child consistent with the Texas Decree and the best interests of the minor child including, but not limited to the costs, if any, for the exercise of [Father's] parenting time and any fees and/or expenses for any court ordered counseling or therapy for the minor child or for the parties.

On June 16, 2016, more than a month after Father filed the Petition and Writ of Error in the chancery court, a summons was issued to Mother. About two months later, on August 4, 2016, Father filed a motion asking the chancery court to award him interim parenting time with the minor child.

Eight days after that, on August 12, 2016, Mother filed a notice of limited appearance to object to lack of service of process and to the chancery court's jurisdiction. Mother asserted that, as of August 11, 2016, she had not been served with Father's Petition and Writ of Error or with his motion for interim parenting time. Additionally, Mother asserted that Father had set his motion for interim parenting time for a hearing on August 12, 2016, and that this setting was inappropriate in light of the final order of protection prohibiting Father from having contact with Mother and the fact that Mother had not been served with the motion.

On September 16, 2016, Mother filed a motion to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6), alleging that the chancery court lacked subject matter jurisdiction and personal jurisdiction. As grounds for her assertion of lack of subject matter jurisdiction, Mother argued that Father had failed to appeal within ten days of the general sessions court's order and that he had no other basis for his untimely appeal. Mother assumed Father meant "writ of error coram nobis" when he referenced "appeal in the nature of a writ of error," and she pointed out that the writ of error coram nobis was obsolete as a means of appeal, having been abrogated in 1971 by the adoption of Tennessee Rule of Civil Procedure 60.02 and by a statute applying Rule 60.02 to general sessions courts. See Tenn. Code Ann. §16-15-727 (2009); Tenn. R. Civ. P. 60.02. Mother described Father's pleading as an impermissible collateral attack on the general sessions court's final order of protection.

Mother also pointed out that Father's petition to enroll the Texas decree was defective on its face because the copy of the decree attached to the petition was incomplete—lacking page five of the fifty-two-page decree. Mother also argued that the chancery court lacked personal jurisdiction to act on the Texas decree because she had not been personally served with the petition. Although it is not entirely clear from the record how Mother became aware of it, she disputed a return signed by a private process server that stated Mother had refused to sign for service at noon on July 22, 2016, at a certain Laurel Oaks Drive address in Memphis, Tennessee. Mother filed her own affidavit denying this assertion and stating that she had never resided at the Laurel Oaks Drive address listed on the return, that she was not present at that address on July 22, 2016, and that she had instead been working at her laboratory at St. Jude Children's Research Hospital ("St. Jude"), on that date and at that time, "along with multiple witnesses, working all morning until after twelve o'clock noon." Mother also presented time-and-date-stamped photographs from a microscope attached to her St. Jude's computer to support her assertion that she had been in her laboratory at St. Jude at the time the return indicated she refused service at the Laurel Oaks Drive address. Finally, Mother presented the affidavit of the woman who owned, and resided with her husband at, the Laurel Oaks Drive home. This woman stated that the couple was home alone at noon on July 22, 2016, when a man stood outside their house and yelled at her husband through their glass security door. When the man left, the couple found papers on their

porch. This woman stated that the couple had resided at the Laurel Oaks Drive address for eleven years and that Mother had never lived with them at that address or at any other location.

In addition to asking the chancery court to dismiss the case, Mother asked the chancery court to award her attorney's fees and costs for defending against what she asserted amounted to an untimely appeal of the general sessions court's order of protection. Mother also sought attorney's fees for defending against Father's motion for interim parenting time. Mother cited three statutes in support of her request for attorney's fees.[6] See Tenn. Code Ann. §§ 20-12-119(c) (Supp. 2019); 27-1-122 (2017); 36-3-617(a)(1) (2017).

Rather than filing a response to Mother's motion, Father filed, on October 20, 2016, a "Motion for Judicial Attachment." In this document, he alleged that a private process server had attempted to serve Mother on July 22, 2016, at the Laurel Oaks Drive address but that Mother had refused to sign or to accept service. Father alleged that another private process server later attempted to serve Mother at the same address but also was unsuccessful. Father asserted that, "[a]lthough it is alleged that [Mother] has never lived at this address, it is believed that is the address of her boyfriend and that she does in fact live at that address." Father asserted that the only alternative was for the chancery court to issue a judicial attachment on Mother's wages at St. Jude and for the chancery court clerk to hold the funds "until such time" as Mother "will appear for service of process." Father submitted affidavits from the private process servers who had attempted to serve Mother at the Laurel Oaks Drive address in support of his assertion that Mother was avoiding service of process.

In his affidavit, the private process server who first attempted to serve Mother on July 22, 2016, stated that he spoke to a man at the Laurel Oaks Drive address on July 20, 2016, and that this man acknowledged knowing Mother and said she "visited him there often." The private process server left a business card and asked the man to have Mother contact him. The private process server returned to the Laurel Oaks Drive residence two days later, July 22, 2016, and saw a woman through the open blinds. She acknowledged him but then walked down a hallway and out of his sight. The man with whom he had spoken two days earlier then came to the door, said "he could not help us anymore," and began "cussing [the private process server] and threatening to call the police." The

---

[6] Mother also claimed that the chancery court lacked subject matter jurisdiction because the appeal had been filed in the wrong court and because Father had failed to timely pay the mandatory costs necessary to perfect an appeal. Because the chancery court resolved the matter on other grounds, it did not address these arguments, and these arguments are not raised in this appeal.

private process server assured the man he would leave and not return to the residence if the woman would come to the door with identification that showed she was not Mother. The man replied that the woman was not coming to the door, said "that they were not going to show [the private process server] anything," and slammed the door in the private process server's face. The private process server then loudly announced that he was "serving Lavinia Dumitrache" and "left the summons on the doorstep" of the porch of the residence. He wrote on the return that Mother had refused to sign for service of process.

The private process server who returned to the Laurel Oaks Drive address the second time, around noon on October 6, 2016, said that an older man came to the door and became "visibly agitated" when the private process server explained that he was looking for Mother. The man "yelled that she didn't live there and ha[d] never lived there," and told the private process server "to get off his property" and said that "he was calling the police." The man then went inside, and the private process server began "to fill out a card" to leave for Mother. However, the man came back to the door "with his phone yelling get off my property, I am calling the police." When the private process server asked if the man knew where Mother lived, the man "responded no and [said that] if he did he would not tell us."

On October 20, 2016, Father filed a motion to continue Mother's motion to dismiss "until such time as the Judicial Attachment on the wages of [Mother] ha[d] been granted, and [Mother] ha[d] appeared for service of process." On October 27, 2016, Mother filed a response in opposition to Father's motion, asserting that a continuance was unnecessary because she was entitled to judgment as a matter of law based on the chancery court's lack of subject matter jurisdiction, even without regard to the lack of service of process. Mother asked the chancery court to deny the motion to continue and asserted it was "interposed purely to delay ultimate dismissal of [Father's] cause of action for which no subject matter jurisdiction exists."

On October 27, 2016, Mother filed a response to Father's Motion for Judicial Attachment, arguing that a statute explicitly prohibits a court without subject matter jurisdiction from utilizing that extraordinary remedy and asking the chancery court to rule first on her motion to dismiss for lack of subject matter jurisdiction before considering Father's Motion for Judicial Attachment. Mother alternatively contended that the chancery court should deny Father's Motion for Judicial Attachment because he had failed to comply strictly with the statutory requirements necessary to obtain the extraordinary remedy.

On October 31, 2016, Father filed a response to Mother's motion to dismiss. Father acknowledged that Mother had correctly recited the law regarding personal and subject matter jurisdiction. Father agreed that the writ of error coram nobis had been abolished by Tennessee Rule of Civil Procedure 60.02, but he contended that the writ of

error had not been abolished and remained a viable option for appeal. Father alternatively asserted that, even if the writ of error was obsolete, his appeal in the nature of a writ of error was appropriate as a new action under Tennessee Code Annotated section 27-7-101 (2017) ("Any person aggrieved by the judgment of any court in a civil case which is not governed by the Tennessee Rules of Civil Procedure by reason of a material error in fact may reverse the judgment upon writ of error coram nobis as provided in this chapter."). Father asked the chancery court to adjudicate the new lawsuit by reviewing "the findings in the transcript filed in this cause [the general sessions court's findings] and make a decision to affirm or reverse." Father additionally argued that, even if the chancery court lacked subject matter jurisdiction to consider his appeal in the nature of a writ of error as a new lawsuit, the chancery court still had subject matter jurisdiction to adjudicate his petition to enroll the Texas divorce decree and his motion for interim parenting time. While Father acknowledged that his petition to enroll the Texas decree could be adjudicated only after Mother had been personally served with the petition and also conceded that Mother had not been served, he urged the chancery court to grant his motion for judicial attachment so that Mother could be served. He argued that equity considerations militated in favor of the chancery court granting his motion, even if he had not complied fully with statutes authorizing judicial attachment and even if the chancery court lacked subject matter jurisdiction. Once the foreign judgment was enrolled, Father asked the chancery court to "make a determination as to [Father's] parenting time with his minor child and set reasonable parameters for the exercise of that parenting time."

On November 2, 2016, Mother filed a reply to Father's response, reiterating her arguments that Father had not timely appealed the order of protection, that the chancery court lacked jurisdiction to review or modify it, that no other method of appeal provided Father with relief as the writ of error is "obsolete and extinct" and not "a substitute for a timely appeal," that Father was attempting to launch a "direct collateral attack" on the order of protection "by attempting to enroll a foreign decree which contradicts the subsequent Order[] of Protection's ban on [Father's] direct or indirect contact of any kind with Defendants due to domestic abuse of them" and that Father had launched "[a]n indirect attack on the Order[] of Protection by his prayer for relief seeking 'interim parenting time' when **all** contact by [Father] with [Mother and the minor child] is prohibited by the final, valid, Order[] of Protection." Mother also reiterated that she had not been personally served with Father's Petition and Writ of Error and that she had refuted by affidavits Father's assertion that she was avoiding service.

On October 28, 2016, the chancery court held a hearing and considered Father's motion to continue the hearing on Mother's motion to dismiss, scheduled for a November 3, 2016 hearing. The chancery court denied the motion to continue and also announced that it would defer its decision on Father's motion for judicial attachment until it had

resolved Mother's motion to dismiss, explaining that subject matter jurisdiction is "one mandatory prerequisite to a lawful attachment."

On November 3, 2016, the chancery court held a hearing on Mother's motion to dismiss and Father's response. The chancery court granted Mother's motion by an order filed November 22, 2016.[7] The chancery court ruled that Father had failed to file his appeal timely within ten days of the general sessions court's judgment as required by statute. The chancery court, citing Haynes v. McKenzie Memorial Hospital, 667 S.W.2d 497 (Tenn. Ct. App. 1984), perm. app. denied (Tenn. Mar. 19, 1984), ruled that an appeal in the nature of a writ of error "is not a cause of action recognized under Tennessee law, said statute having been repealed."

As for Father's petition to enroll the Texas decree, the chancery court concluded that the petition was "fatally deficient as it is incomplete, missing page [five] of [fifty-two] pages, a substantive page of that Judgment." The chancery court explained that it was "not able to confirm such a judgment, the same being incomplete." The chancery court also ruled that Father had incorrectly relied on statutes applicable to enrollment of judgment debts, see Tenn. Code Ann. §§ 26-6-101 to -109, rather than statutes applicable to "a foreign divorce decree," see Tenn. Code Ann. §§ 36-6-229 to -238. The chancery court dismissed the petition without prejudice. The chancery court "pretermitted and dismissed" all other "pending prayers for relief, claims, defenses and motions," including Father's motion for judicial attachment. The chancery court also denied Mother's request for a hearing and an award of attorney's fees, costs, and damages but assessed costs to Father.

On December 13, 2016, Mother filed a motion to alter or amend the chancery court's order denying her request for attorney's fees, discretionary costs, and litigation expenses, and she asked for a hearing on her motion. Mother cited three statutes in support of her motion and asserted that Father's Petition and Writ of Error had been an attempt to overturn the general sessions court's final order of protection. Mother also submitted an affidavit from her attorney attesting to the accuracy of her billing and the reasonableness of her hourly rate, based on the rates charged by other attorneys in the geographical area with experience similar to her own to handle similar legal matters. She also explained the reasonableness and necessity of the hours and total fees she claimed in light of the criteria in Tennessee Supreme Court Rule 8, RPC 1.5 relevant to attorney fee claims. As of November 16, 2016, Mother requested attorney's fees of $27,147.50, expenses of $170.63, and discretionary costs of $781.50, and Mother's attorney provided

---

[7] The chancery court granted Mother's motion by an order entered on November 16, 2016, but it entered a corrected order on November 22, 2016.

an itemization and invoices documenting and supporting these requests. Additionally, on December 19, 2016, Mother filed a memorandum of law to support her motion to alter or amend to award attorney's fees and costs.

On December 29, 2016, Father filed a response in opposition to Mother's motion. He argued that Mother's motion to alter or amend constituted a general appearance, as it included no language limiting Mother's appearance. He also asserted that no legal or contractual basis supported her request for attorney's fees and alternatively argued that, even if an attorney's fee award were permissible, Mother's fee request was "excessive and unreasonable in light of the matter that was before the [chancery court]." Father also contended that "a determination of the actual attorney fees" could not be made "until such time as depositions have been taken regarding same." Taking Mother's deposition was essential, Father maintained, "to determine the financial arrangement she had with her counsel regarding attorney fees." Father also purported to "reserve[] the opportunity" to amend his response "once discovery is completed." Father did not request a hearing.

On January 13, 2017, the chancery court held a hearing on Mother's motion to alter or amend, and on January 20, 2017, entered an order granting Mother's motion to alter or amend. The chancery court did not determine the amount of the award at that time but instead directed Mother's attorney to submit a supplementary affidavit of her itemized time, fees, and costs for the chancery court proceedings. The chancery court then denied Father's motion to set depositions.

Mother's attorney submitted the supplemental affidavit of attorney's fees, litigation expenses, and discretionary costs as the chancery court ordered.[8] Mother asserted that she had incurred $6,310.00 in attorney's fees from November 22, 2016, through January 17, 2017, as well as $346.08 in discretionary costs and litigation expenses. Mother claimed attorney's fees totaling $33,457.50 and discretionary costs and expenses totaling $1,298.21.

On February 3, 2017, Father filed a memorandum of law again opposing Mother's request for attorney's fees. Father reiterated his argument that no statute entitled Mother to an award of attorney's fees. He suggested that the $7,500 attorney's fee award the general sessions court had granted Mother was sufficient. Father also asserted that Mother's failure to produce the contract she signed with her attorney precluded her from obtaining an award of attorney's fees. Father denied that his Petition and Writ of Error amounted to frivolous litigation. He alternatively argued that, if a statute entitled Mother

---

[8] In fact, these documents were filed on January 18, 2017, two days before the chancery court filed its order, which apparently memorialized a decision announced at the January 13, 2017 hearing.

to attorney's fees, her claim was excessive and unreasonable given the nature of the litigation. Father renewed his request to take Mother's and her attorney's deposition, but Father again did not request a hearing or any other opportunity to present proof. Instead, Father submitted affidavits from three lawyers in support of his response. Two of these lawyers stated that they were familiar with the rates charged by attorneys in the geographical area with experience similar to Mother's attorney and with the reasonable and necessary hours attorneys in the area claimed when defending against litigation of the type Father brought. These attorneys opined that, although Mother's attorney's hourly rate was reasonable, the hours she claimed were excessive and unreasonable. One attorney opined that the claim should be reduced by at least thirty hours. The other attorney opined that only ten to fifteen hours were reasonable and necessary to prepare Mother's motion to dismiss, meaning, in his opinion, that Mother's attorney fee claim was excessive by sixty to sixty-five hours. These attorneys had not reviewed the record of the proceeding and had only reviewed the attorney fee invoices and itemizations Mother's attorney filed.

The third attorney did not discuss the reasonableness of Mother's attorney fee claim. Rather, he opined that no statute authorized an award of attorney's fees for defending the litigation Father brought. This attorney also had not reviewed the entire record, although he had reviewed Father's Petition and Writ of Error and other, albeit unidentified, portions of the record.

Mother replied to Father's response by submitting an affidavit of a lawyer who also was familiar with fees charged in the geographical area by attorneys with experience comparable to Mother's attorney for the type of litigation at issue in this proceeding. This attorney had reviewed Mother's contract with her attorney, as well as the entire record and pleadings in this matter, and this lawyer opined that both the hourly rate and the total number of hours Mother's attorney claimed were reasonable, necessary, and not excessive.

The chancery court held a hearing on February 17, 2017, at which counsel for Mother and Father presented arguments and answered questions. The chancery court asked Mother's attorney whether she could apportion her work and fee claim between the relief requested in Father's Petition and Writ of Error. Mother's attorney responded that she could not because "the entire essence" of Father's action was his "dissatisfaction with the orders of protection issue," and "his wish to change that and have [the chancery court] modify" the order of protection. Mother's attorney stated "that domestic violence victims who are caused to defend lawsuits for eleven and a half months" and are subjected to "paper abuse" are entitled to an award of attorney's fees and costs because "the legislative intent" and "the public policy" of Tennessee is that "victims of domestic violence should not incur further injury and damages by baseless lawsuits."

The chancery court granted Mother's motion for attorney's fees but awarded an amount—$24,000—almost ten thousand dollars less than Mother claimed. The chancery court also awarded Mother costs and expenses of $1,398.21, for a total award of $25,398.21. The chancery court explained its ruling as follows:

1. That under the circumstances for which [Father] filed suit, applicable statutes, T.C.A. §§ 36-3-617 and 618 clearly contemplate the award of attorney fees and costs to [Mother] for successfully defending the Order[] of Protection previously granted by the General Sessions Court.

2. That T.C.A. § 36-5-103(c) also authorizes the award of attorney fees and costs in litigation pertaining to parenting, which [Father's] litigation implemented, and which [Mother] successfully defended due to allegations of a hostile situation involving the child and threatening harm to the child.

3. That [Mother] [is] also entitled to attorney fees pursuant to T.C.A. § 20-12-119(c)(1) as the prevailing party in the Rule 12.02(6) dismissal of [Father's] litigation but that this statute's limitation of $10,000 shall not be employed to limit [Mother's and the minor child's] recovery when greater fees are warranted and permitted by other statutes recited herein above.

4. That, additionally, [Mother is] entitled to the award of [] discretionary costs under T.R.C.P. Rule 54.02.

In his appeal to the Court of Appeals, Father challenged only the award of attorney's fees, arguing that no statute authorized it. New v. Dumitrache, No. W2017-00776-COA-R3-CV, 2019 WL 1579806, at *1, *3 (Tenn. Ct. App. Apr. 12, 2019), perm. app. granted (Tenn. Sept. 24, 2019). Father alternatively and briefly argued that, even if the award was statutorily authorized, it was excessive. Id. at *3. For her part, Mother asked the Court of Appeals to award her additional attorney's fees incurred on appeal. Id.

Before addressing these issues, however, the Court of Appeals sua sponte raised another issue: whether the chancery court "had subject matter jurisdiction to award attorney's fees given that the case was dismissed for lack of subject matter jurisdiction." Id. (citations omitted). The intermediate appellate court ruled that the chancery court erred by determining that it lacked subject matter jurisdiction because, according to the intermediate appellate court, the "writ of error remains an avenue for review of judgments of general sessions courts." Id. at *4. Despite this ruling, the intermediate appellate court failed to remand to the chancery court for consideration on the merits and, instead, considered Father's challenge to the award of attorney's fees. The Court of Appeals held that a statute authorized the chancery court to award Mother attorney's fees

for Father's Appeal in the Nature of a Writ of Error but not for Father's Petition to enroll the Texas decree. Id. at *8. Given this conclusion, the intermediate appellate court vacated the award of attorney's fees and remanded "for a determination of the fees related solely to the defense of the writ of error." Id. at *9. The Court of Appeals stated that, on remand, "Father may request an evidentiary hearing on the issue of attorney's fees and present evidence of his own on the issue of fees." Id. (citing Nutritional Support Servs., Ltd. v. Taylor, 803 S.W.2d 213, 216 (Tenn. 1991)). The Court of Appeals denied Mother's request for attorney's fees on appeal, concluding that Father's appeal was not frivolous. Id. This Court granted Mother's application for permission to appeal.[9]

## II. Standard of Review

This appeal requires us to determine whether the chancery court had subject matter jurisdiction to consider Father's Petition and Writ of Error. These are questions of law to which de novo review applies. Johnson v. Hopkins, 432 S.W.3d 840, 844 (Tenn. 2013) (citation omitted). De novo review also applies to our determination of whether any statute authorized the chancery court to award Mother attorney's fees. State v. Thompson, 197 S.W.3d 685, 690 (Tenn. 2006) (citations omitted). Finally, de novo review applies to issues of statutory construction that must be addressed to resolve the other issues presented in this appeal. Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC, 433 S.W.3d 512, 516-17 (Tenn. 2014) (citing Baker v. State, 417 S.W.3d 428, 433 (Tenn. 2013)).

In resolving issues of statutory construction, we are guided by the following now-familiar principles. "Our role in statutory interpretation is to carry out legislative intent without broadening or restricting the statute beyond its intended scope." State v. L.W., 350 S.W.3d 911, 916 (Tenn. 2011) (citing State v. Marshall, 319 S.W.3d 558, 561 (Tenn. 2010)). The plain and ordinary meaning of the statutory language guides our understanding of legislative intent when the language is unambiguous. Id. (citing Marshall, 319 S.W.3d at 561). Words used in the statute "'must [also] be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'" Ray v. Madison Cnty., 536 S.W.3d 824, 831 (Tenn. 2017) (quoting Mills v. Fulmarque, Inc., 360 S.W.3d 362, 368 (Tenn. 2012)). We presume that the General Assembly is aware of its prior enactments and knows the state of the law at the time it enacts legislation and also is aware of how courts have previously construed

---

[9] On March 23, 2020, Mother filed a motion to strike portions of Father's responsive brief. By an April 1, 2020 order, we deferred ruling on that motion until this opinion. Upon due consideration, and although some of Mother's objections are well-taken, the motion is denied.

its statutes. Brundage v. Cumberland Cnty., 357 S.W.3d 361, 365 (Tenn. 2011). "Courts must presume that the Legislature did not intend an absurdity and adopt, if possible, a reasonable construction which provides for a harmonious operation of the laws." Fletcher v. State, 951 S.W.2d 378, 382 (Tenn. 1997) (citing Cronin v. Howe, 906 S.W.2d 910, 912 (Tenn. 1995); Epstein v. State, 366 S.W.2d 914, 918 (Tenn. 1963)).

## III. Analysis

## A. Subject Matter Jurisdiction

### *1. Father's Appeal in the Nature of a Writ of Error*

Subject matter jurisdiction refers to a court's lawful authority to adjudicate a legal matter. Chapman v. DaVita, Inc., 380 S.W.3d 710, 712 (Tenn. 2012) (citations omitted). Statutes or constitutional provisions confer and define a court's subject matter jurisdiction, and parties to litigation cannot confer or expand subject matter jurisdiction by consent or waiver. Tennessean v. Metro. Gov't of Nashville, 485 S.W.3d 857, 863 (Tenn. 2016) (citations omitted); Johnson, 432 S.W.3d at 843-44 (citing In re Estate of Trigg, 368 S.W.3d 483, 489 (Tenn. 2012)). For the reasons set forth below, we disagree with the Court of Appeals' conclusion that the chancery court had subject matter jurisdiction. The intermediate appellate court erred when it determined that the writ of error remains a viable and separate option by which to appeal from general sessions court orders.

First, the Court of Appeals' conclusion disregards the specific statute[10] that confers subject matter jurisdiction on chancery courts to consider appeals from orders of protection entered by general sessions courts. This statute provides:

> Any appeal from a final ruling on an order of protection by a general sessions court . . . shall be to the circuit or chancery court of the county. Such appeal shall be filed within ten (10) days and shall be heard de novo[.]

---

[10] There is a longstanding principle that "specific statutory provisions control over general provisions." Martin v. Powers, 505 S.W.3d 512, 524 (Tenn. 2016) (citing Lovlace v. Copley, 418 S.W.3d 1, 20 (Tenn. 2013)); Woodroof v. City of Nashville, 192 S.W.2d 1013, 1015 (Tenn. 1946) ("[W]here the mind of the legislature has been turned to the details of a subject and they have acted upon it, a statute treating the subject in a general manner should not be considered as intended to affect the more particular provision.").

Tenn. Code Ann. § 36-3-601(3)(F). By stating that such an appeal "shall" be filed within ten days, this statute plainly conditions a chancery court's subject matter jurisdiction upon timely filing the appeal. Id.; see also Griffin v. Campbell Clinic, P.A., 439 S.W.3d 899, 902 (Tenn. 2014); Love v. Coll. Level Assessment Servs., Inc., 928 S.W.2d 36, 38 (Tenn. 1996); Wells Fargo Bank, N.A. v. Dorris, 556 S.W.3d 745, 749 (Tenn. Ct. App. 2017) (citation omitted). If an appeal is not filed within the statutory ten-day period, the general sessions court's order becomes final, and the chancery court lacks subject matter jurisdiction of the untimely appeal. See Griffin, 439 S.W.3d at 902; Love, 928 S.W.2d at 38; Wells Fargo Bank, N.A., 556 S.W.3d at 749. Here, Father unquestionably failed to file his appeal within ten days of the general sessions court's order of protection, as Tennessee Code Annotated section 36-3-601(3)(F) specifically requires. Accordingly, the chancery court did not err in dismissing the untimely appeal for lack of subject matter jurisdiction.

Additionally, the Court of Appeals erroneously relied on two other statutes to support its conclusion that the writ of error remains a viable method of appealing a general sessions court's order. The first statute states:

> A writ of error lies from the final judgment of the court of general sessions to the circuit or proper appellate court, and from the circuit and chancery court to such appellate court, in all cases where an appeal in the nature of a writ of error would have lain.

Tenn. Code Ann. § 27-6-101 (2017). The second statute states that a party wishing to appeal has sixty days from the date of the general sessions court's judgment to apply for a writ of error. Id. § 27-6-103 (2017). The text of these statutes, in substantially the same form, has been part of Tennessee law since the 1858 Code.[11]

In 1959, however, the General Assembly enacted legislation that established "a statewide system of general sessions courts" and "set up a uniform appeal period of [ten] days in general sessions cases." Steinhouse v. Neal, 723 S.W.2d 625, 626 (Tenn. 1987) (discussing Act of Mar. 11, 1959, ch. 109 § 4, 1959 Tenn. Pub. Acts 353, 353-54). This 1959 legislation has not been changed in significant ways since its enactment and currently is codified at Tennessee Code Annotated section 27-5-108, which provides:

---

[11] These statutes were codified as sections 3176 and 3179 of the 1858 Code.

- 15 -

(a)(1) Any party may appeal from a decision of the general sessions court to the circuit court of the county within a period of ten (10) days on complying with this chapter.

(2) In civil cases, if one (1) or more of the parties before the general sessions court, on one (1) or more warrants, perfects an appeal of a decision of the general sessions court to the circuit court, as provided in this section, then cross appeals and separate appeals are not required, and upon the filing of a notice of appeal by any party, issues may be brought up for review by any party.

(b) This provision allowing ten (10) days in which to perfect an appeal shall apply in every county of Tennessee, any provision of any private act to the contrary notwithstanding, *it being the legislative intent to establish a uniform period of ten (10) days in which any such appeal may be perfected in any county in Tennessee.*

(c) Any appeal shall be heard de novo in the circuit court.

(d) If no appeal is taken within the time provided, then execution may issue.

Tenn. Code Ann. § 27-5-108 (2017) (emphasis added).[12]  More than thirty years ago, this Court explained the impact of the 1959 legislation now codified at section 27-5-108. Steinhouse, 723 S.W.2d at 626.  The Steinhouse Court addressed whether a statute, enacted in 1858, that provided two days to appeal a general sessions court's judgment in a forcible entry and detainer action had been implicitly repealed by the 1959 legislation providing ten days to appeal from a general sessions court's judgment.  Id. at 626-27. The Court concluded:

---

[12] The 1959 legislation was originally codified at Tennessee Code Annotated section 27-509 and provided:

[A]ny party may appeal from an adverse decision of the [g]eneral [s]essions [c]ourt to the [c]ircuit [c]ourt of the county within a period of ten (10) days on complying with the law as now provided for appeals from justices of the peace courts.  This provision allowing ten (10) days in which to perfect an appeal shall apply in every county of Tennessee, any provision of any [p]rivate [a]ct to the contrary notwithstanding, it being the legislative intent to establish a uniform period of ten (10) days in which any such appeal may be perfected in any county in Tennessee.  Any appeal shall be heard *de novo* in [c]ircuit [c]ourt.  If no appeal is taken within the time provided, then execution may issue.

Act of Mar. 11, 1959, ch. 109, § 4, 1959 Tenn. Pub. Acts 353, 353-54.

Based upon the wording and the history of both statutes, we are convinced that it was the legislative intent that [Tennessee Code Annotated section] 27-5-108 control the period of limitations. The purpose of the 1959 Act was to enact a law dealing with general sessions courts as a whole. The Act was to include a uniform time period for appeals in all cases throughout the state. The legislative intent, as expressed in the wording of the 1959 Act[,] was "to establish a uniform period of ten (10) days in which any such appeal may be perfected in any county in Tennessee."

Where two statutes cover the same subject matter, the last enactment repeals the former by implication.

Id. at 627. The Steinhouse rationale applies with equal force in the circumstances of this case. The statutes on which the Court of Appeals relied here to conclude that Father had sixty days to appeal by way of a writ of error were enacted in 1858. Like the statutes at issue in Steinhouse, these statutes, in particular the statute providing sixty days for appeal, were implicitly repealed by the 1959 legislation establishing a uniform method and timeframe for appealing general sessions court judgments. Therefore, even if we disregarded the specific statutory provision governing appeals from orders of protection entered by general sessions courts, Father's appeal would still be untimely because the 1959 legislation implicitly repealed the statute allowing sixty days to appeal by way of a writ of error appeal from general sessions court judgments and replaced it with a uniform ten-day period for perfecting a de novo appeal from a general sessions court's order to the circuit court only. Tenn. Code Ann. § 27-5-108(a)(1), -108(b).

Finally, even assuming the statutes on which the Court of Appeals relied were not implicitly repealed under the Steinhouse rationale by the 1959 legislation, these statutes became obsolete on July 1, 1979, the effective date of the Tennessee Rules of Appellate Procedure. Tenn. Sup. Ct. R. 1. Rule 3(d) of the Tennessee Rules of Appellate Procedure declares:

An appeal as of right is an appeal that does not require permission of the trial or appellate court as a prerequisite to taking an appeal. There shall be one method of appeal as of right to be known as an 'appeal as of right.' *Writs of error, appeals in the nature of a writ of error, and simple appeals are abolished.*

- 17 -

Tenn. R. App. P. 3(d) (emphasis added). Rule 3(d), and other procedural changes made by the Rules of Appellate Procedure, were implemented by a statute that declares: "After the rules have become effective, all laws in conflict with the rules shall be of no further force or effect." Tenn. Code Ann. § 16-3-406 (2009); see also Tenn. R. App. P. 1, Advisory Comm'n. cmts. (referring to section 16-3-406 and stating that, by its terms, "after the rules have taken effect, all laws in conflict therewith are of no further force and effect"). Therefore, pursuant to Rule 3(d) and section 16-3-406, on July 1, 1979, the effective date of the Rules of Appellate Procedure, any statutes providing for an appeal by a writ of error or an appeal in the nature of a writ of error were "of no further force and effect." See Haynes, 667 S.W.2d at 498 (recognizing "the abolition of the writ of error as an appellate procedure"); State v. Copeland, 647 S.W.2d 241, 242 (Tenn. Crim. App. 1983) (recognizing that "[a]ppeals in the nature of a writ of error" were abolished by the Tennessee Rules of Appellate Procedure).

Here, the Court of Appeals acknowledged that Rule 3(d) abolished the writ of error as a method of appeal, but it concluded that this abolition did not apply to appeals from general sessions courts because the Tennessee Rules of Appellate Procedure "govern procedure in proceedings before the Supreme Court, Court of Appeals, and Court of Criminal Appeals" and do not apply to general sessions courts. Tenn. R. App. P. 1. However, Rule 3(d) does not merely prescribe procedure; it broadly abolishes specific methods of appeal that had previously existed in Tennessee law. By abolishing these methods of appeal, Rule 3(d) directly advanced one of the primary purposes supporting adoption of the Rules of Appellate Procedure—"bring[ing] together in one place a simplified, coherent, and modern body of law." Moody v. State, 160 S.W.3d 512, 516 (Tenn. 2005) (citing Tenn. R. App. P. 1, Advisory Comm'n. cmts.). The Rules of Appellate Procedure were "intended to replace the appellate court procedure that was governed by scattered provisions of the Tennessee Code and the rules and decisions of the appellate courts." Id. at 516 (citing Tenn. R. App. P. 1, Advisory Comm'n cmts.). As the original Advisory Commission Comments to Tennessee Rule of Appellate Procedure Rule 3(d) stated:

> One of the needless complexities of existing law is the tripartite division among writs of error, appeals in the nature of a writ of error, and simple appeals. These devices for gaining appellate review are of only historical interest with little contemporary utility. In order to simplify appellate procedure these three traditional methods of gaining appellate review are expressly abolished.

Tenn. R. App. P. 3(d), Advisory Comm'n cmt. (1979), *available at* <u>Tennessee Rules of Court</u> XXIX (West 1978).[13]  Therefore, we decline to read Tennessee Rule of Appellate Procedure 1 as a limitation on the broad abolition of writs of error and other forms of appeal in Rule 3(d), as doing so would frustrate one of the main purposes of the Rules of Appellate Procedure–simplification of the appellate process.[14]  The chancery court properly held that the writ of error is obsolete and no longer a viable method of appealing a general sessions court's judgment.

Accordingly, for all these reasons, we hold that the chancery court correctly concluded that it lacked subject matter jurisdiction.

### 2. Petition to Enroll a Foreign Decree

We also hold that the chancery court correctly dismissed without prejudice Father's petition to enroll the 2008 Texas decree.  The United States Constitution requires that each state give full faith and credit to the public acts, records, and judicial proceedings of every other state.  U.S. Const. art. IV, § 1.  As one means of fulfilling this obligation, Tennessee enacted the Uniform Enforcement of Foreign Judgments Act ("UEFJA").  Tenn. Code Ann. §§ 26-6-101 to -109.  The UEFJA provides a "'streamlined process,'" <u>Estate of Bentley v. Byrd</u>, 556 S.W.3d 211, 216-17 (Tenn. Ct. App. 2018) (quoting <u>Baumann v. Williams</u>, No. M2006-00962-COA-R3-CV, 2007 WL 3375365, at *2 (Tenn. Ct. App. Nov. 13, 2007)), with two distinct steps: (1) enrollment and (2) enforcement, <u>Guseinov v. Synergy Ventures, Inc.</u>, 467 S.W.3d 920, 925 (Tenn. Ct. App. 2014) (citations omitted); <u>Baumann</u>,  2007 WL 3375365, at *2 (citing <u>Restatement (Second) of Conflict of Law</u>, ch. 5, topic 2, intro. cmt., at 277 (1971)). Enrollment, also known as recognition, "'is a condition precedent to [a judgment's] enforcement.'" <u>Baumann</u>, 2007 WL 3375365, at *2 (citation omitted).

---

[13]  That Rule 3(d) abolished the writ of error as a method of appeal generally is also reflected in the Compiler's Notes to the Tennessee Code, which stated that section 27-6-101 "may be affected by T.R.A.P. 3(d)." Tenn. Code Ann. § 27-6-101, Compiler's Notes (1980).

[14]  This reading would also result in section 27-6-101 remaining partially in force and effect, to the extent it provides for a writ of error appeal from general sessions court judgments, when section 16-3-406 declares that "*all laws* in conflict" with the Rules of Appellate Procedure are "of no further force and effect" after July 1, 1979.  Tenn. Code Ann. § 16-3-406 (emphasis added).  We decline to adopt such a reading, as doing so would be inconsistent with the plain statutory language, frustrate legislative intent, and result in an absurdity. <u>Brundage</u>, 357 S.W.3d at 365; <u>Fletcher</u>, 951 S.W.2d at 381-82.

The requirements for enrollment are straightforward. "[F]oreign judgment" is defined as "any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state." Tenn. Code Ann. § 26-6-103. Enrollment requires filing "[a] copy of any foreign judgment authenticated in accordance with the acts of [C]ongress or the statutes of this state . . .in the office of the clerk of any circuit or chancery court of this state." Id. § 26-6-104(a). "The clerk shall treat the foreign judgment in the same manner as a judgment of a court of record of this state." Id. § 26-6-104(b). "A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a court of record of this state and may be enforced or satisfied in like manner." Id. § 26-6-104(c).

Here, Father failed to comply with these straightforward requirements for enrollment. Father never filed a copy of the Texas judgment in the clerk's office. Instead, Father attached what he described as a copy of the Texas decree to his petition, but the copy was incomplete, lacking page five of the fifty-two-page decree. Father, therefore, failed to provide a copy of the decree he sought to enroll, and this omission deprived the chancery court of authority to act on Father's request. See Griggs v. Gibson, 754 P.2d 783, 785 (Colo. App. 1988) (holding that trial court lacked authority to take any enforcement actions where the plaintiff failed to file an authenticated copy of the judgment and filed only an "Affidavit of Foreign Judgment"); Manley v. Manley, 591 P.2d 1042, 1043 (Colo. App. 1978) (holding that the court had no basis to take any enforcement actions where no copy of any judgment was filed); Love v. Moreland, 280 S.W.3d 334, 337 (Tex. App. 2008) (stating that an abstract of a judgment is not sufficient to satisfy the statutory requirement of filing an authenticated copy of the foreign judgment); Hull v. Buffalo Fed. Sav. & Loan Ass'n, 661 P.2d 1049, 1051 (Wyo. 1983) (discussing the UEFJA and defining copy to mean identical to and a reproduction of the original judgment). The requirement of filing an authenticated copy of the foreign judgment is

> a step designed to convert [the] foreign judgment into a domestic judgment capable of being enforced through the judicial processes of this state. *Consequently, the filing of the authenticated copy of the foreign judgment is not a mere administrative step that may be waived; it is, rather, the equivalent of the entry of an original judgment by the domestic court and, thus, is a necessary condition precedent to the domestic enforcement of that [foreign] judgment.*

Griggs, 754 P.2d at 785 (emphasis added); see also Jolly v. Jolly, 130 S.W.3d 783, 787-88 (Tenn. 2004) (holding that the chancery court erred by enforcing a decree that was not properly registered under the Uniform Interstate Family Support Act (citing Tenn. Code Ann. § 36-5-2301 (Supp. 1999)); Tenn. Code Ann. §§ 36-5-2601 to -2603 (Supp. 1999)).

We emphasize that not every instance of noncompliance with the UEFJA will deprive a chancery court of subject matter jurisdiction. <u>Summers v. Ryan</u>, No. E2006-01757-COA-R10-JV, 2007 WL 161037, at \*6 (Tenn. Ct. App. Jan. 23, 2007). This case does not, however, involve mere omissions from a petition, like <u>Summers</u>. Here, Father failed to provide a complete copy of the foreign decree. [15] As such, Father failed to fulfill the first essential step necessary to invoke the jurisdiction conferred by the UEFJA.[16] The chancery court correctly dismissed the matter without prejudice.

### B. Attorney's Fees

#### 1. Subject Matter Jurisdiction

Having concluded that the chancery court properly dismissed Father's action for lack of subject matter jurisdiction, we will next consider whether the chancery court lacked authority to award attorney's fees. The Court of Appeals raised this question but did not answer it after erroneously concluding that the chancery court erred by concluding that it lacked subject matter jurisdiction.

We begin with an obvious proposition— a court has "jurisdiction to determine its own jurisdiction, for a basic issue in any case before a tribunal is its power to act, and it must have authority to decide that question in the first instance." <u>Barry v. State Bar of Cal.</u>, 386 P.3d 788, 793 (Cal. 2017) (quoting <u>Rescue Army v. Mun. Ct.</u>, 171 P.2d 8, 10-11 (Cal. 1946)). Even when a case is dismissed for lack of subject matter jurisdiction, the court retains power to award attorney's fees and costs. <u>Id.</u> As the United States Supreme Court has explained, requests for attorney's fees are "collateral" and have "a distinct and independent character" from the underlying suit. <u>Sprague v. Ticonic Nat'l Bank</u>, 307 U.S. 161, 169 (1939) (footnote omitted) (citation omitted). Courts should view a request

---

[15] The record on appeal indicates that, after Father filed a notice of appeal from the chancery court's judgment in this case, he filed a petition to enroll and certify a foreign judgment in the Circuit Court for Shelby County. The record also reflects that this petition was served on Mother on June 26, 2017, but that matter has no bearing on this appeal.

[16] Mother also argued that the chancery court lacked personal jurisdiction over Father's petition for enrollment and enforcement of the Texas decree because she was not personally served. Tenn. Code Ann. § 26-6-105(c). The chancery court did not resolve this question, and it is not raised in this appeal. The Court of Appeals also discussed the Uniform Child Custody Jurisdiction and Enforcement Act—a statute that provides a mechanism for registering foreign judgments that make child custody determinations. Tenn. Code Ann. §§ 36-6-201 to -243 (2017). Father neither relied on this statute in his Petition and Writ of Error nor complied with its requirements for registration. Therefore, we need not and do not address it in this appeal.

for attorney's fees as an "'independent proceeding supplemental to the original proceeding and not a request for modification of the original decree.'" Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395 (1990) (quoting Sprague, 307 U.S. at 170); see also Willy v. Coastal Corp., 503 U.S. 131, 136 (1992); Citizens for a Better Env't v. Steel Co., 230 F.3d 923, 926-27 (7th Cir. 2000); Devon Energy Prod. Co. v. KCS Res., LLC, 450 S.W.3d 203, 220 (Tex. App. 2014); Hous. Auth. of Seattle v. Bin, 260 P.3d 900, 903 (Wash. Ct. App. 2011) (citation omitted)); Kalich v. Clark, 215 P.3d 1049, 1051 (Wash. Ct. App. 2009). Cf. J.W. Kelly & Co. v. Conner, 123 S.W. 622, 637 (Tenn. 1909) (dismissing a case for lack of subject matter jurisdiction "and adjudging costs"): Honeycutt ex rel. Alexander H. v. Honeycutt, M2015-00645-COA-R3-CV, 2016 WL 3662166, at *1, *5 (Tenn. Ct. App. June 30, 2016) (resolving an outstanding request for attorney's fees even though the order of protection had expired and the appeal was otherwise moot). So, while it is true that a court lacking subject matter jurisdiction has no authority to issue orders on the merits of the case, J.W. Kelly & Co., 123 S.W. at 637, the court retains authority to adjudicate and grant a request for attorney's fees incurred in determining that it lacks jurisdiction.

When adjudicating such an "independent proceeding"—a request for attorney's fees—most states, including Tennessee, apply the "American rule." Cracker Barrel Old Country Store, Inc. v. Epperson, 284 S.W.3d 303, 308 (Tenn. 2009) (citations omitted). Under this principle, "a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case." Id. (citations omitted). Here, the chancery court ruled that statutes entitle Mother to an award of attorney's fees.[17] We agree with the chancery court that Tennessee Code Annotated §§ 36-3-617 and -618 entitle Mother to an award of attorney's fees in this case. Tennessee Code Annotated section 36-3-618 declares:

> The purpose of this part is to recognize the seriousness of domestic abuse as a crime and to assure that the law provides a victim of domestic abuse with enhanced protection from domestic abuse. A further purpose of this chapter is to recognize that in the past law enforcement agencies have

---

[17] Father argued below that Mother's request for attorney's fees could not be adjudicated until and unless she produced a copy of the contract she had with her attorney, and he sought permission to depose Mother and her attorney about this contract. The chancery court denied Father's request. We note that Mother has relied solely on statutes, not a contract, to support her request that the chancery court order Father to pay her attorney's fees. Her entitlement to attorney's fees is therefore governed by statutes alone. Eberbach v. Eberbach, 535 S.W.3d 467, 477 (Tenn. 2017).

treated domestic abuse crimes differently than crimes resulting in the same harm but occurring between strangers. Thus, the general assembly intends that the official response to domestic abuse shall stress enforcing the laws to protect the victim and prevent further harm to the victim, and the official response shall communicate the attitude that violent behavior is not excused or tolerated.

Tenn. Code Ann. § 36-3-618. In summary, the "legislative intent is to: (1) provide enhanced protection to domestic abuse victims; (2) promote uniform law enforcement intervention whether the crime is domestic or committed by strangers; and (3) communicate a position of intolerance to domestic abuse perpetrators." Kite v. Kite, 22 S.W.3d 803, 805 (Tenn. 1997). One means the General Assembly chose to ensure that victims of domestic abuse receive "enhanced protection" is to enact a statute that broadly declares that domestic abuse victims should not be required to bear the financial burdens of legal action made necessary by a domestic abuse perpetrator. Tennessee Code Annotated section 36-3-617 provides, in pertinent part, as follows:

> Notwithstanding any other law to the contrary, no domestic abuse victim, stalking victim or sexual assault victim shall be required to bear the costs, including any court costs, filing fees, litigation taxes or any other costs associated with the filing, issuance, registration, service, dismissal or nonsuit, appeal or enforcement of an ex parte order of protection, order of protection, or a petition for either such order, whether issued inside or outside the state. If the court, after the hearing on the petition, issues or extends an order of protection, all court costs, filing fees, litigation taxes and attorney fees shall be assessed against the respondent.

Tenn. Code Ann. § 36-3-617(a)(1). This Court has not previously addressed the scope of this statute, but we agree with the Court of Appeals that section 36-3-617 clearly authorizes awarding attorney's fees and costs incurred in obtaining an order of protection or the extension of an order of protection, or in defending an appeal involving the issuance or extension of an order of protection. Purifoy v. Mafa, 556 S.W.3d 170, 203 (Tenn. Ct. App. 2017); Walker v. Pawlik, No. M2013-00861-COA-R3-CV, 2013 WL 5781565, at *5 (Tenn. Ct. App. Oct. 23, 2013); Wiser v. Wiser, No. M2010-02222-COA-R3-CV, 2011 WL 4729870, at *4 (Tenn. Ct. App. Oct. 7, 2011); Rehrer v. Rehrer, No. E2010-01907-COA-R3-CV, 2011 WL 13165343, at *6 (Tenn. Ct. App. Sept. 5, 2011); Land v. Casteel, No. E2010-00593-COA-R3-CV, 2011 WL 808784, at *3 (Tenn. Ct. App. Mar. 8, 2011); Brown v. Vaughn, No. E2010-00373-COA-R3-CV, 2010 WL 3767123, at *8 (Tenn. Ct. App. Sept. 28, 2010).

We also agree with the Court of Appeals that Tennessee Code Annotated section 36-3-617(a)(1) does not authorize an award of attorney's fees for matters unrelated to obtaining an order of protection or an extension of an order of protection or defending an appeal involving the issuance or extension of an order of protection. Reynolds v. Reynolds, No. M2013-01912-COA-R3-CV, 2014 WL 7151596, at *10-11 (Tenn. Ct. App. Dec. 12, 2014); Rodgers v. Rodgers, No. E2011-02190-COA-R3-CV, 2012 WL 3900791, at *13 (Tenn. Ct. App. Sept. 10, 2012). For example, in Rodgers v. Rodgers, the Court of Appeals explained that section 36-3-617(a)(1) authorized an award of attorney's fees on appeal incurred in defending the extension of an order of protection but not attorney's fees on appeal incurred for other unrelated issues. Rodgers, 2012 WL 3900791, at *13. Similarly, in Reynolds v. Reynolds, the Court of Appeals held that section 36-3-617(a)(1) did not authorize an award of attorney's fees incurred in successfully prosecuting a petition for criminal contempt alleging a willful violation of an order of protection. 2014 WL 7151596, at *10-11.

Father's Petition and Writ of Error presents circumstances distinct from the foregoing authorities. It was not a typical, timely appeal from a general sessions court's order of protection. However, all issues raised in Father's Petition and Writ of Error ultimately related to the general sessions court's order of protection. Here, Father filed a single document that included two separate requests which would have superseded the general sessions court's order of protection prohibiting Father's contact with the minor child had they been granted. Indeed, in his pleading, Father repeatedly asked the chancery court to review the transcript of the general sessions court hearing and determine whether the order of protection had been appropriately issued. Father also asked the chancery court to enforce the parenting plan in the Texas decree, which again would have superseded the order of protection had the request been granted. Finally, in a separate, subsequent motion, Father requested interim parenting time with the minor child, and this request, too, had it been granted, would have superseded the general sessions court's order of protection. Father's pleadings and requests were, as Mother contends, all efforts to convince the chancery court to grant him relief that would have effectively set aside the general sessions court's order of protection.

We agree with the chancery court that in the circumstances of this case section 36-3-617(a)(1) authorizes awarding Mother attorney's fees incurred defending against Father's pleadings in their entirety. We note that the chancery court asked Mother's attorney whether she could apportion her work between Father's requests, and she explained why she could not. Having carefully reviewed the record, it is clear why the chancery court accepted counsel's explanation. To deny Mother an award of all her attorney's fees for defending against Father's pleading would frustrate legislative intent. By enacting sections 36-3-617 and -618, the General Assembly made clear that victims of domestic violence are not to be burdened with the costs of obtaining or defending orders of protection necessary to ensure their protection. As already noted, this Court's prime

directive when interpreting statutes is to effectuate legislative intent and reasonably construe statutes in a manner that is consistent with the language used and that provides for a harmonious operation of the laws. Kite, 22 S.W.3d at 805 (citations omitted). "We [must] presume that the legislature did not intend an absurdity." Id. We would frustrate legislative intent and construct an inharmonious, illogical, and absurd reading of section 36-3-617(a)(1) by holding, as Father contends, that a party against whom an order of protection has been entered may avoid responsibility for attorney's fees by failing to appeal timely and by instead filing a pleading that attacks and seeks review of the order of protection by obsolete and defective legal means. The record in this appeal illustrates clearly that Father's chosen means of attacking the general sessions court's order of protection actually gave rise to more legal uncertainty, which, in turn, required more legal work and resulted in more legal fees for Mother than would have been necessitated had Father timely appealed the order of protection in the manner permitted by statute. We find it illogical and inconsistent with the declared legislative intent to interpret the statute in a manner that would impose on Mother the legal costs of Father's litigation choices when his clear purpose in filing the Petition and Writ of Error was to overturn the general session court's order of protection. See Kite, 22 S.W.3d at 805-06 (declining to interpret the statute in a manner that would have penalized domestic abuse victims for the trial court's failure to set a hearing within the ten days prescribed by statute). Accordingly, we conclude that the chancery court properly awarded Mother's attorney's fees pursuant to Tennessee Code Annotated sections 36-3-617 and 36-3-618.[18]

## 2. Father's Request for a Remand and Hearing

Having concluded that the chancery court did not err by awarding Mother attorney's fees, we also reverse the Court of Appeals' decision to remand this matter for a hearing on attorney's fees. In this Court, Father has not challenged the award of attorney's fees as excessive, as he did in a cursory fashion before the Court of Appeals. He has, however, asked this Court to remand to the chancery court for a hearing on attorney's fees, at which Father contends that he should be given an opportunity to present proof. As the factual summary in this opinion illustrates, Father's pleading generated much litigation in the chancery court. The chancery court required Mother's attorney to submit an affidavit and an itemization documenting the work she had done, and Mother's attorney provided scrupulous details on both documents. Mother's attorney also submitted a memorandum discussing the factors this Court has identified as relevant

---

[18] In light of our conclusion that this statute authorized awarding Mother attorney's fees, we need not address whether the other two statutes on which the chancery court relied also authorized awarding Mother attorney's fees. See Tenn. Code Ann. §§ 36-5-103 and 20-12-119(c)(1).

to a court's determination of reasonable attorney's fees and explaining their application to this case. Tenn. Sup. Ct. R. 8, RPC 1.5(a); Wright ex rel. Wright v. Wright, 337 S.W.3d 166, 169-70 (Tenn. 2011). Father submitted a written response in opposition to Mother's request as well as affidavits from three attorneys, with two stating that the hours Mother's attorney claimed to have worked were excessive and the third attorney stating that no statute authorized the chancery court to award attorney's fees. The chancery court held a hearing, at which counsel for both Mother and Father were questioned and given an opportunity to present proof. Father did not ask to present additional proof. Ultimately, the chancery court awarded Mother attorney's fees in an amount almost ten thousand dollars less than she had requested. Thus, the record on appeal establishes clearly that the chancery court has already held a hearing on the amount of attorney's fees and that Father was afforded an opportunity to present proof on the issue, and in fact, did present proof on the issue. Father has failed to establish any basis for remanding to the chancery court for another hearing on the question of attorney's fees incurred in the trial court, and we decline to do so.

### 3. Mother's Request for Attorney's Fees on Appeal

However, as she did in the Court of Appeals, Mother has requested an additional award of attorney's fees incurred on appeal relying on Tennessee Code Annotated § 36-3-617(a)(1). As already explained herein, we agree that this statute authorizes awarding Mother attorney's fees incurred in this case. Accordingly, we remand to the trial court for a determination of the amount of reasonable attorney's fees Mother has incurred for this appeal.

### IV. Conclusion

For the reasons stated herein, the judgment of the Court of Appeals is reversed, and the judgment of the chancery court is reinstated. This matter is remanded to the chancery court to determine the amount of reasonable attorney's fees Mother has incurred and should be awarded for this appeal.

_____
CORNELIA A. CLARK, JUSTICE