IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 12, 2010 Session Heard at Murfreesboro[1]

**STATE OF TENNESSEE v. SHERYL ANN MARSHALL,
JESSICA PICKETT, AND MONICA BUTLER**

**Appeal by Permission from the Court of Criminal Appeals
Criminal Court for Sumner County
No. CR-1049-2006, CR-29-2007, CR-1053-2006      Dee David Gay, Judge**

---

**No. M2007-02718-SC-R11-CO - September 3, 2010**

---

Three tenants of the Gallatin Housing Authority were indicted under the theft of services statute, Tenn. Code Ann. § 39-14-104, for failing to report to the housing authority earnings that would have increased their rent.  On the tenants' motion, the trial court dismissed the indictments, and the Court of Criminal Appeals affirmed the dismissal.  Applying the canon of statutory construction *ejusdem generis*, we hold that the definition of services in section 39-11-106(a)(35) does not include public housing.  We therefore affirm the Court of Criminal Appeals.

**Tenn. R. App. P. 11 Appeal by Permission;
Judgment of the Criminal Court of Appeals Affirmed**

JANICE M. HOLDER, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK, GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Benjamin A. Ball, Assistant Attorney General, and Preston Shipp, Assistant Attorney General, for the appellant, State of Tennessee.

David A. Doyle and Robert T. Depew, Gallatin, Tennessee, for the appellees, Sheryl Ann Marshall, Jessica Pickett, and Monica Butler.

---

[1] Oral argument was heard in this case on February 12, 2010, in Murfreesboro, Rutherford County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

**OPINION**

Facts and Procedure

Sheryl Ann Marshall, Jessica Pickett, and Monica Butler executed leases with the Gallatin Housing Authority (GHA). Because the rent required by each lease was based on the lessee's income, each lessee was required to provide updated income information annually. GHA verified this information and calculated the lessee's rent for the next year. According to the affidavits of complaint, Ms. Marshall, Ms. Pickett, and Ms. Butler failed to report earnings that would have increased their rent. After including their unreported earnings, GHA computed that Ms. Marshall owed $4,882.90 in additional rent and late fees and that Ms. Pickett and Ms. Butler owed $4,856 and $2,483 respectively. Separate indictments charged Ms. Marshall, Ms. Pickett, and Ms. Butler with "unlawfully and intentionally obtain[ing] services of the value of $1,000 or more from Gallatin Housing Authority by deception, fraud, false pretense or other means" in violation of Tennessee Code Annotated section 39-14-104 (2006).[2]

The defendants filed identical motions to dismiss their indictments, arguing that the statutory definition of "services" does not include public housing. At a hearing on the defendants' motions, the trial court received into evidence a lease agreement between the GHA and Ms. Butler, which the parties agreed was representative of the leases of Ms. Marshall and Ms. Pickett. The trial court found that no provision in the lease fell within the statutory definition of services and dismissed the indictments against all of the defendants. The Court of Criminal Appeals affirmed the orders of dismissal. We granted the State's application for permission to appeal.

Analysis

"A person commits theft of services who: (1) Intentionally obtains services by deception, fraud, coercion, false pretense or any other means to avoid payment for the services . . . ." Tenn. Code Ann. § 39-14-104. For the purposes of this offense, "'[s]ervices' includes labor, skill, professional service, transportation, telephone, mail, gas, electricity, steam, water, cable television or other public services, accommodations in hotels, restaurants or elsewhere, admissions to exhibitions, use of vehicles or other movable property." Tenn.

---

[2] Since the defendants' indictments, the General Assembly has enacted section 39-14-153 (Supp. 2009). This section makes it an offense for a recipient of public housing to obtain dwelling accommodations by knowingly concealing a material fact if the concealment results in "[t]he person's lease or rental payment being less than the person would otherwise be required to pay under the housing authority's income qualification standards." Tenn. Code Ann. § 39-14-153(a)(2).

Code Ann. § 39-11-106(a)(35) (2006);[3] Tenn. Code Ann. § 39-14-104 sentencing comm'n cmt. At issue in this case is whether obtaining a lease for public housing may constitute theft of services pursuant to section 39-14-104. This issue is a matter of statutory interpretation to which we apply a de novo standard of review. State v. Wilson, 132 S.W.3d 340, 341 (Tenn. 2004).

The definition of services in section 39-11-106(a)(35) lists specific items but does not list public housing. When a statutory definition states that it "includes" specific items, we have held that the "enumerated items are illustrative, not exclusive." Gragg v. Gragg, 12 S.W.3d 412, 415 (Tenn. 2000). Our task therefore is to examine the term "public housing" to determine whether it may fairly be included among the non-exclusive terms listed in the statutory definition of services.

Public housing is readily distinguishable from most of the statute's specifically listed terms and categories. For example, public housing has no relationship to labor, skill, professional service, transportation, admissions to exhibitions, or use of vehicles or other movable property. The pertinent part of the definition states that "'[s]ervices' includes . . . other public services, accommodations in hotels, restaurants or elsewhere." Tenn. Code Ann. § 39-11-106(a)(35). Obtaining public housing therefore may constitute a theft of services only if public housing is similar to accommodations in hotels or restaurants or if it falls within "other public services" and "or elsewhere," two of the statute's non-specific categories. These terms are designed to broaden the scope of the statute beyond the specific listing of terms in the statute. The breadth of these phrases is uncertain, and we consider them in context to determine legislative intent. State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000).

Our role in statutory interpretation is to give a statute the full effect of the General Assembly's intent without unduly restricting or expanding the statute's intended scope. Larsen-Ball v. Ball, 301 S.W.3d 228, 232 (Tenn. 2010) (quoting Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995)). "[W]e presume that every word in the statute has meaning and purpose and should be given full effect if the obvious intent of the General Assembly is not violated by so doing." Id. (citing In re C.K.G., 173 S.W.3d 714, 722 (Tenn. 2005)). We find the General Assembly's intent in the plain and ordinary meaning of the statute's language if the language is unambiguous. Wilson, 132 S.W.3d at 341. "When the meaning of a statute

---

[3] Subsequent to the indictments in this case, the Tennessee General Assembly added the following language to the end of this definition: "and any other activity or product considered in the ordinary course of business to be a service, regardless of whether it is listed in this subdivision (35) or a specific statute exists covering the same or similar conduct." Tenn. Code Ann. § 39-11-106(a)(35) (Supp. 2009).

is in question, we rely upon well-established canons of statutory construction." State v. Sherman, 266 S.W.3d 395, 401 (Tenn. 2008).

*Ejusdem generis* is a canon of statutory construction that dictates that "when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed."[4] Black's Law Dictionary 594 (9th ed. 2009); Sallee v. Barrett, 171 S.W.3d 822, 829 (Tenn. 2005). In this way, *ejusdem generis* limits the breadth of the general phrase so that neither the general phrase nor the specific terms are inoperative. Compare Arcadia v. Ohio Power Co., 498 U.S. 73, 78 (1990) (observing that *ejusdem generis* prevents a general phrase from "swallowing what precedes it") with James v. United States, 550 U.S. 192, 200 (2007) (observing that "Congress' inclusion of a broad residual provision . . . indicates that it did not intend the preceding enumerated offenses to be an exhaustive list"). Additionally, when applied to a criminal statute, the canon of *ejusdem generis* clarifies the breadth of the general phrase so that the statute provides adequate notice of the proscribed activity. Cf. United States v. Santos, 128 S. Ct. 2020, 2025 (2008) (reciting the fundamental principle that "no citizen should be held accountable for a violation of a statute whose commands are uncertain").

Applying *ejusdem generis* to section 39-11-106(a)(35), the breadth of "or other public services" is limited to a class that includes telephone, mail, gas, electricity, steam, water, and cable television. In other sections of the Tennessee Code, the General Assembly has listed these services as examples of utilities. See Tenn. Code Ann. §§ 65-4-101(6) (2004), 65-31-102(12) (2004 & Supp. 2009).[5] Public housing is distinct from a class comprised of utilities. Public housing provides a dwelling accommodation, see Tenn. Code Ann. § 13-20-413 (1999), whereas utilities are used to make a dwelling accommodation habitable and comfortable. Moreover, the General Assembly has enacted separate statutory schemes

---

[4] We are mindful that *ejusdem generis* cannot be used to defeat the intent and purpose of the legislature. See United States v. Alpers, 338 U.S. 680, 682 (1950). The General Assembly enacted both sections 39-11-106(a)(35) and 39-14-104 as part of the Criminal Sentencing Reform Act of 1989, ch. 591, sec. 1, 1989 Tenn. Pub. Acts 1169, 1174, 1208-09. In its lengthy debate amending and adopting the Act, neither the General Assembly nor its committees discussed the breadth of the theft of services offense or the definition of services. We find nothing in the statute's legislative history that is contrary to our conclusions today.

[5] Section 65-4-101(6) defines "public utilities," in pertinent part, as any entity that owns, operates, manages, or controls "within the state, any interurban electric railway, traction company, all other common carriers, express, *gas*, *electric light*, heat, power, *water*, *telephone*, telegraph, *telecommunications services*, or any other like system." (Emphasis added). Section 65-31-102(12) defines "utility," in pertinent part, as "any line, system or facility used for producing, storing, conveying, transmitting, or distributing *communications*, *electricity*, *gas*, petroleum, petroleum products, hazardous liquids, *water*, *steam*, sewerage and other underground facilities." (Emphasis added).

to regulate utilities and public housing. <u>Compare</u> Tenn. Code Ann. §§ 65-4-101 to -506 (2004 & Supp. 2009) <u>with</u> Tenn. Code Ann. §§ 13-20-101 to -614 (1999 & Supp. 2009). We therefore conclude that "other public services" does not encompass public housing.

Applying *ejusdem generis* to the phrase "accommodations in hotels, restaurants, or elsewhere" limits the breadth of "or elsewhere" to a class comprised of restaurant accommodations and hotel accommodations.[6] The General Assembly defines a "restaurant" as "an eating establishment . . . that gives, or offers for sale, food to the public, guests, or employees." Tenn. Code Ann. § 39-17-1802(12) (Supp. 2009); <u>see</u> Tenn. Code Ann. § 62-7-107(a)(3) (2009); § 68-14-302(6)(A) (2006 & Supp. 2009). Public housing provides a dwelling, and its accommodations are clearly distinct from accommodations at a restaurant. The issue therefore is whether public housing accommodations are in the same class as hotel accommodations.

The General Assembly defines "hotel" as "a place where sleeping accommodations are furnished for pay to *transients or travelers*." Tenn. Code Ann. § 68-14-302(8) (emphasis added). In comparison, the General Assembly describes public housing as "dwelling accommodations" that a housing authority rents or leases to persons of low income. Tenn. Code Ann. § 13-20-113 (1999). A dwelling unit is "a building or structure used as a place of *residence*." Tenn. Code Ann. § 13-20-102(10) (1999) (emphasis added). The General Assembly has enacted separate statutory schemes to regulate accommodations in hotels and accommodations in public housing. <u>Compare</u> Tenn. Code Ann. §§ 62-7-101 to -112 (2009) <u>and</u> §§ 68-14-301 to -327 (2006 & Supp. 2009) <u>with</u> Tenn. Code Ann. §§ 13-20-101 to -614. Additionally, public housing leases are subject to the Uniform Residential Landlord and Tenant Act, Tenn. Code Ann. §§ 66-28-101 to -521 (2004 & Supp. 2009); <u>see</u> Tenn. Code Ann. § 66-28-201(e)(1) (2004), whereas "[t]ransient occupancy in a hotel" is exempted from that Act. Tenn. Code Ann. § 66-28-102(c)(3) (2004 & Supp. 2009). These statutes demonstrate that the General Assembly considers public housing to be distinct from hotel accommodations. We conclude that public housing accommodations are dissimilar from hotel accommodations and therefore that "or elsewhere" does not encompass public housing.

We reach our conclusions today by relying on a well-established canon of statutory construction and by consulting legislative history and other statutory schemes enacted by the General Assembly. The rule of lenity further supports our conclusion.

---

[6] To the extent that "accommodations . . . elsewhere" has been interpreted broadly to include monthly accommodations, these cases are overruled. <u>See</u> State v. Davis, No. 02C01-9704-CC-00139, 1998 WL 208854, at *2 (Tenn. Crim. App. Apr. 30, 1998).

[W]hen the fair import of the language of a penal statute, in the context of the legislative history and case law on the subject, still results in ambiguity, the rule of strict construction would apply to limit the statute's application to those persons or circumstances clearly described by the statute. In other words, "the rule of lenity is a tie-breaker when there is an otherwise-unresolved ambiguity."

State v. Horton, 880 S.W.2d 732, 735 (Tenn. Crim. App. 1994) (quoting United Sates v. White, 888 F.2d 490, 497 (7th Cir. 1989)); see State v. Denton, 149 S.W.3d 1, 17 (Tenn. 2004) (stating that "in criminal cases, all ambiguities will be resolved in favor of the defendant" (citing State v. Rogers, 992 S.W.2d 393, 400 (Tenn. 1999))). The United States Supreme Court has described the rule of lenity as "rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his [or her] conduct is prohibited." Dunn v. United States, 442 U.S. 100, 112 (1979); accord State v. Richmond, 100 S.W.2d 1, 3 (Tenn. 1937). "[T]o ensure that a legislature speaks with special clarity when marking the boundaries of criminal conduct, courts must decline to impose punishments for actions that are not 'plainly and unmistakably' proscribed." Dunn, 442 U.S. at 112-13 (quoting United States v. Gradwell, 243 U.S. 476, 485 (1917)). As such, we would resolve the ambiguity in favor of Ms. Marshall, Ms. Pickett, and Ms. Butler.

Conclusion

For the reasons articulated above, we hold that the theft of services offense does not apply to public housing. The Court of Criminal Appeals therefore properly affirmed the trial court's dismissal of the indictments against the defendants. Costs of this appeal are assessed against the appellant, the State of Tennessee.

_____
JANICE M. HOLDER, CHIEF JUSTICE