IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 11, 2026, Session

## STATE OF TENNESSEE v. BRADLEY J. COOPER

**Appeal from the Circuit Court for Rutherford County**
**No. 89360     Howard W. Wilson, Chancellor**

_____

### No. M2024-00872-CCA-R3-CD

_____

Defendant, Bradley J. Cooper, was indicted for one count of aggravated stalking and one count of harassment. The case went to trial, and the jury found Defendant guilty as charged. The trial court merged Defendant's harassment conviction into his aggravated stalking conviction and sentenced Defendant to an effective sentence of two years' incarceration. On appeal, Defendant argues (1) his conviction for aggravated stalking violated the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and Tennessee Rule of Criminal Procedure 8; (2) the evidence was insufficient to support his conviction for aggravated stalking; (3) the trial court abused its discretion by refusing to take judicial notice, admit testimony regarding, or allow him to otherwise argue that orders of protection generally expire after one year; and (4) his conviction for aggravated stalking and harassment violated the First Amendment of the United States Constitution. After review, we find that Defendant's conviction for aggravated stalking violated the Double Jeopardy Clause, and we vacate Defendant's aggravated stalking conviction. We affirm Defendant's conviction for harassment in Count 2 but remand the case for entry of a corrected judgment form, removing the condition that Count 2 is merged with Count 1.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part, Vacated in Part and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which TOM GREENHOLTZ and JOHN W. CAMPBELL, SR., JJ., joined.

Paul Andrew Justice, III, Murfreesboro, Tennessee, for the appellant, Bradley J. Cooper.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Jennings H. Jones, District Attorney General; and Sarah N. Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Pre-Trial Motion to Dismiss*

This case arose from Defendant's conduct directed at his estranged wife, Jamie Cooper, during October 2022 across Rutherford and Williamson Counties. On October 30, 2022, the Rutherford County General Sessions Court issued an arrest warrant for Defendant in this case. The warrant alleged that Defendant committed felony stalking based on October 2022 conduct directed at the victim. On November 1, 2022, Defendant approached the victim at a Sonic in Williamson County and opened her vehicle's door. Law enforcement responded to a call reporting the incident. When law enforcement arrived at Sonic, Defendant attempted to flee but was captured and arrested on both the Rutherford and Williamson County charges.

On January 9, 2023, the Williamson County Grand Jury indicted Defendant with one count of aggravated stalking based upon his approaching the victim at the Sonic and "call[ing], threaten[ing] to harm or kill himself, and continu[ing] to show up wherever she was located across multiple cities" in violation of an order of protection.

On April 4, 2023, Defendant was indicted by the Rutherford County Grand Jury in this case for aggravated stalking. The indictment in this case alleged that Defendant had stalked the victim on "divers[e] days in October, 2022" in violation of an order of protection. On July 10, 2023, Defendant pled guilty to simple stalking in the Williamson County case ("the Williamson County conviction").

Three days later, on July 13, 2023, Defendant filed a pre-trial motion to dismiss in Rutherford County. He argued, as relevant here, that the State violated the Double Jeopardy Clause because it "charg[ed] [Defendant] twice by dividing up the same basic crime, arbitrarily, into a 'series of temporal or spatial units.'" (citing *Brown v. Ohio*, 432 U.S. 161, 169 (1977)). Similarly, Defendant alleged that his charge for aggravated stalking violated Rule 8 because "the [Rutherford County and Williamson County] episodes were part of the same continuous episode[.]"

In the same motion, Defendant also argued that his charges for aggravated stalking and harassment violated the First Amendment. He argued that the stalking statute, facially and as applied, violated the First Amendment as construed in *Counterman v. Colorado*, 600 U.S. 66, 72-73 (2023). Defendant argued, "[Because] there is no subjective mens rea for the result of conduct, [the stalking statute] has the same problem that the court condemned in *Counterman*." He further asserted that the stalking statute was unconstitutional because it criminalized speech that "falls easily outside the true-

threats realm by including innocuous terms like 'molested' or 'harassed[.]'" In addition, Defendant claimed that the harassment statute under which he was charged also violated the First Amendment because it "criminalize[d] speech simply on the basis that it annoys, offends, alarms, or even frightens people[,]" rendering it fatally overbroad.

The trial court denied Defendant's motion on both grounds. First, the trial court explained that Defendant's charges in this case violated neither the Double Jeopardy Clause nor Rule 8 because "the record d[id] not clearly state that the Williamson County [authorities] based []Defendant's charge on conduct that occurred in Rutherford County" and "the Rutherford County and Williamson County charges arose from different conduct over the course of different days, constituting a break in the episodes." The trial court reasoned, "[A]n individual convicted of stalking does not have the freedom to continue stalking that same victim on Rule 8 or double jeopardy grounds." Second, the trial court found that the stalking statute satisfied the mens rea requirement of *Counterman* because it construed the statute as requiring the State to show that a defendant "acted intentionally as to each element of the offense, including the defendant's conduct and the defendant's subjective mens rea." It further determined that the harassment statute did not violate the First Amendment, reasoning that the "'relationship between [a defendant's stalking] conduct and any protected speech or expression is merely incidental.'" (quoting *State v. Lakatos*, 900 S.W.2d 699, 701 (Tenn. Crim. App. 1994)).

*Trial*

The victim and Defendant married on June 8, 2013, and the couple lived in Benton County, Tennessee, for several years and had three children. In June 2020, the victim moved from the marital home to Henry County, and she filed for divorce in Benton County in October 2020 based on Defendant's infidelity.

Shortly after filing for divorce, the victim sought a restraining order against Defendant in Benton County. Between October 2020 and July 2021, the Benton County Chancery Court entered a series of orders that prohibited Defendant from contacting the victim. On July 12, 2021, the victim also obtained an ex parte temporary order of protection against Defendant in the Henry County General Sessions Court. The order demanded Defendant to

[N]ot abuse, threaten to abuse, hurt or try to hurt, or frighten [the victim].

[N]ot put [the victim] in fear of being hurt or in fear of not being able to leave or get away.

[N]ot stalk or threaten to stalk [the victim].

[N]ot come about [the victim] for any purpose.

[N]ot contact [the victim] either directly or indirectly, by phone, email, messages, mail or any other type of communication or contact.

In a separate order entered on July 21, 2021, the Henry County General Sessions Court ordered that the July 12, 2021 temporary order of protection "remain[ed] in full force and effect until further orders of this Court." The order further required Defendant to avoid "caus[ing] intentional damage to [the victim]'s property" and "com[ing] into Henry County, Tennessee for any reason whatsoever EXCEPT for travel . . . from his residence to an employer[.]" (Emphasis in original). The order also transferred the case to the Benton County Chancery Court to coincide with the parties' divorce proceedings. Defendant signed the July 21, 2021 order.

In December 2021, the Benton County Chancery Court held a hearing on the victim's motion for a temporary parenting plan, and Defendant and his counsel attended. After the hearing, the Benton County Chancery Court entered a final order on January 31, 2022. The order provided, "The Temporary Order of Protection filed for record July 21, 2021 . . . shall remain in full force and effect with the exception of court appearances ONLY. [Defendant] shall not enter Henry County, Tennessee for any other reason as ordered by this Court and reiterated to him this date." (Emphasis in original). Defendant's counsel signed the order.

From July 2021 to June 2022, Defendant did not contact the victim. During this time, the victim began dating Joshua Tittle, and Defendant began dating Emily Biggers. In June 2022, the victim learned that Defendant was dating Ms. Biggers. Despite knowing that she "w[as]n't supposed to reach out to him," she called Defendant. Defendant and the victim discussed the possibility of parenting counseling and "getting together with [Ms. Biggers] and the kids[.]"

In July 2022, Defendant held a cookout at his home, and the victim, the children, and Ms. Biggers attended. The cookout went "fine" and the children "seemed to like" Ms. Biggers. Defendant and the victim further discussed seeking a parenting plan and reconciling their marriage. However, the victim denied wanting to reconcile. A few weeks later, Defendant continued to seek reconciliation by contacting the victim via Facebook. In one of the messages he sent to the victim, Defendant included a picture of his genitalia captioned, "I want to f my wife. And I would l[o]ve to tell you about some[ ]things." The victim asked Defendant to stop contacting her.

- 4 -

Near the end of summer 2022, the victim obtained a "really good job" in Nolensville, Tennessee, so she moved to Murfreesboro, Tennessee. Defendant initially filed a motion to prevent the move, but when the motion was denied, he apologized to the victim and asked whether they could "work something out." The victim agreed, seeking to encourage the children's relationship with Defendant. Despite the victim's testimony to the contrary, Defendant claimed that the couple was attempting to reconcile during this period. However, Defendant learned that the victim was dating Mr. Tittle in mid-to-late October and became angered by the revelation, and his conduct quickly escalated.

On October 7, 2022, Defendant left two voicemails on the victim's phone. The voicemails complained about his paying the victim's divorce attorney and threatened the victim's divorce attorney's children. He further accused the victim of being "selfish." The victim attempted to calm Defendant, but Defendant's anger only worsened. The victim eventually blocked Defendant from contacting her over Facebook. Nevertheless, when Defendant realized he was blocked on October 18, 2022, he sent the victim a text message that included a photograph of his genitalia and a caption asking to speak with her. The victim demanded Defendant stop contacting her, but Defendant continued to accuse the victim of controlling him. The victim once more asked Defendant to stop contacting her, and when Defendant continued to text her, she blocked him from sending her text messages.

On October 23, 2022, the victim asked Mr. Tittle to stay at her Murfreesboro home because she was "getting nervous" about Defendant's behavior. When Mr. Tittle attempted to leave the victim's home the next morning, he found his vehicle's front windshield broken, its exterior covered in spray paint, two of its tires flat, and "B[****]" written on its side. The couple reported the damage to law enforcement, and Defendant later admitted to vandalizing the vehicle. On the same day, Mr. Tittle received unsolicited Facebook messages from Ms. Biggers's account depicting Defendant and Ms. Biggers having sexual intercourse. Defendant also admitted sending these messages from Ms. Biggers's account without Ms. Biggers's consent.

On October 26, 2022, the victim and the children attended Family Worship Center, a church in Murfreesboro, Tennessee. Once she brought the children to their classes, the victim went to the church auditorium for Bible service. Footage obtained from the cameras situated around the church property depicted Defendant arriving at the church on the same night. He parked his vehicle behind the victim's vehicle. When he exited his vehicle, he walked to the side of the victim's vehicle, crawled underneath it for a few seconds, and stood back up. He then entered the church and spoke with a staff member, who directed him to the church auditorium. Defendant entered the auditorium where the victim was, but he promptly left without speaking with the victim. When Defendant exited the church building, he was stopped by Wade Niles, the church's

security guard. Defendant briefly spoke with Mr. Niles, and Defendant asked about the church's stance on divorce and for Mr. Niles to "pray for [him and the victim] and the kids." When Mr. Niles spoke with the victim later that evening, the victim informed Mr. Niles that Defendant was prohibited from contacting her under an order of protection. The victim also denied telling Defendant where she went to church or inviting him to the church. After speaking with the victim, Mr. Niles investigated the area around the victim's vehicle, where he discovered a pocketknife. The incident was reported to law enforcement, and Mr. Niles gave them the pocketknife and security camera footage.

On October 28, 2022, Mr. Tittle drove the victim to her work in Nolensville so he could use her vehicle to run errands. After leaving the victim's workplace, Mr. Tittle was exiting onto the interstate when Defendant drove next to his vehicle. Mr. Tittle testified that Defendant pointed a handgun at him. Mr. Tittle immediately exited onto the interstate and pulled to the shoulder to report the incident to law enforcement. Defendant did not follow Mr. Tittle onto the interstate, and Defendant denied pointing a gun at Mr. Tittle. Defendant testified that he only "flipped him a bird and said 'f[***] you.'"

Defendant's indicted conduct in this case culminated on October 29, 2022, during a phone conversation he had with Ms. Biggers, whom he was no longer dating. Ms. Biggers asked her new boyfriend to record the conversation. On the call, Defendant became audibly upset and told Ms. Biggers, "You tell that b[****] . . . I am going to G[******] kill her or she's going to gosh d[***] get right[.]" Fearing what Defendant might do, Ms. Biggers immediately contacted the victim and provided her with the recording. The following day, the victim reported the threat to law enforcement.

Benjamin Sagrera, a detective employed by the Murfreesboro Police Department in the Special Victims Unit, was assigned to investigate Defendant's case. Detective Sagrera met with the victim at her home, and the victim "told [him] everything that was going on" and provided him with screenshots and recordings of the messages she received from Defendant. Detective Sagrera also inquired whether there was a valid order of protection in place, and the victim brought copies of the orders in her possession. Detective Sagrera also searched a law enforcement database to determine whether there were any active orders. Detective Sagrera determined that the one issued by the Benton County Chancery Court was still valid "on its face," so he concluded that Defendant had violated the order by contacting the victim.

Defendant testified that he believed there was not a valid order of protection prohibiting him from contacting the victim in October 2022. He explained, "[T]o my knowledge[,] they were only through the divorce, which was off the table because she fired her lawyer." He continued, "I wasn't for sure. Sometimes I was allowed to go to school; sometimes I wasn't. Sometimes we w[ere] allowed to talk; sometimes we

w[ere]n't.  But one thing I knew for a fact is [that the order] only issued for a year."  However, Defendant admitted that he attended the December 2021 hearing held by the Benton County Chancery Court on the victim's motion, and he admitted that the January 31, 2022 order prohibited him from contacting the victim.  He testified that he nevertheless "didn't pay any attention" to the hearing or the resulting order because "my lawyer told me to go[.]"

Defendant also testified that his October 2022 conduct was not intended to frighten or intimidate the victim.  Defendant also testified that none of his actions actually scared the victim.  He claimed, "[the victim]'s assaulted me too many times during the marriage.  And she knows that I would never hurt her.  And she knows that I love my kids too much that if something ever bad happened to her, because of my hand, I would have to live with that."  Finally, while Defendant agreed that the victim told him to stop contacting her on October 18, 2022, he claimed that the two had a conversation thereafter indicating that she wished to continue communicating.

The trial court ruled that the January 31, 2022 order validly extended the July 21, 2021 extension of the July 12, 2021 temporary order of protection prohibiting Defendant from contacting the victim.

The jury convicted Defendant as charged on all counts.  The trial court merged Defendant's harassment conviction into his aggravated stalking conviction and sentenced him to an effective sentence of two years' incarceration.  Defendant filed a motion for new trial, renewing his Double Jeopardy, Rule 8, and First Amendment challenges to his convictions.  He further asserted that the trial court erred by excluding evidence at trial of the fact that orders of protection generally expire after one year.  The trial court denied the motion.  Defendant timely appealed.

*Analysis*

On appeal, Defendant argues that (1) his conviction for aggravated stalking violated the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and Tennessee Rule of Criminal Procedure 8; (2) the evidence was insufficient to support his conviction for aggravated stalking; (3) the trial court abused its discretion by refusing to take judicial notice, admit testimony regarding, or allow him to otherwise argue that orders of protection generally expire after one year; and (4) his convictions for aggravated stalking and harassment violated the First Amendment of the United States Constitution.[1]  We will consider each of these issues in turn.

_____

[1] We have rearranged the presentation of Defendant's issues for clarity.  We further note that Defendant in his principal brief argued that the trial court erred "by not dismissing the count of

Defendant argues that his conviction for aggravated stalking in this case ("the Rutherford County conviction") violated the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution because the conduct underlying the Rutherford County conviction was the "same offense" as the Williamson County conviction. Alternatively, Defendant argues that the trial court erred by not dismissing the indictment pursuant to Tennessee Rule of Criminal Procedure 8 because the conduct underlying his Rutherford County conviction was a part of the "same criminal episode" as his conduct underlying his prior Williamson County conviction. The State argues that Defendant's Rutherford County conviction for aggravated stalking violated neither the Double Jeopardy Clause nor Tennessee Rule of Criminal Procedure 8. We agree with Defendant that his conviction for aggravated stalking in this case violated the Double Jeopardy Clause, so we vacate his aggravated stalking conviction. [2]

The Fifth Amendment of the United States Constitution guarantees that no person shall be twice put in jeopardy of life or limb for the same offense. U.S. Const. amend. V. The Double Jeopardy Clause provides three separate protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *State v. Watkins*, 362 S.W.3d 530, 541 (Tenn. 2012) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *abrogated on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989)). Whether multiple convictions violate the protection against double jeopardy is a mixed question of law and fact, which this Court will review de novo without any presumption of correctness. *State v. Smith*, 436 S.W.3d 751, 766 (Tenn. 2014) (citing *State v. Thompson*, 285 S.W.3d 840, 846 (Tenn. 2009)).

---

[a]ggravated [s]talking pretrial due to the defective indictment." However, Defendant concedes in his reply brief that this issue is meritless. He states, "[U]pon reviewing the State's case, it does indeed appear that the original indictment here—'stalking' in violation of a court order that bars contact—is functionally identical to the language endorsed in *State v. Hammonds*, 30 S.W3d 294 (Tenn. 2000)." Therefore, this issue is moot.

[2] In its brief, the State notes that Defendant does not challenge his harassment conviction on double jeopardy or Rule 8 grounds. In his reply brief, Defendant concedes that his principal brief "only talks about '[s]talking[.]'" Nevertheless, in his reply brief, he requests us to review his harassment conviction for a double jeopardy or Rule 8 violation because "[s]talking is just a reiteration of [h]arassment, [so] the same arguments basically apply to both." We decline to do so, finding that Defendant has waived review of this issue by not raising it in his principal brief. *See State v. Morgan*, 727 S.W.3d 182, 198 (Tenn. Crim. App. 2025) (providing that an appellant waives appellate review of an issue by raising it for the first time in the reply brief).

The Double Jeopardy Clause "serves principally as a restraint on courts and prosecutors[,]" so "[t]he legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments[.]" *Brown*, 432 U.S. at 165. Consequently, courts "must [first] focus upon ascertaining legislative intent" when determining whether double jeopardy has been violated. *Watkins*, 362 S.W.3d at 556. "If the General Assembly has expressed an intent to permit multiple punishment[s], no further analysis will be necessary, and multiple convictions should be upheld against a double jeopardy challenge." *Id.* "Likewise, if the General Assembly has expressed an intent to preclude multiple punishment[s], then no further analysis will be necessary, and improper multiple convictions should be vacated." *Id.*

When determining the General Assembly's intent from a statute, the question is one of statutory interpretation, and our role in such an inquiry "is to assign a statute the full effect of the legislative intent without restricting or expanding the intended scope of the statute." *State v. Dycus*, 456 S.W.3d 918, 924 (Tenn. 2015) (citing *State v. Springer*, 406 S.W.3d 526, 533 (Tenn. 2013); *State v. Marshall*, 319 S.W.3d 558, 561 (Tenn. 2010)). "[W]e look to the plain language of the statute to determine the intent of the legislature." *Id.* (citing *State v. Jennings*, 130 S.W.3d 43, 46 (Tenn. 2004)). We do so with the presumption that "every word in the statute has meaning and purpose and should be given full effect if the obvious intent of the General Assembly is not violated by so doing." *Marshall*, 319 S.W.3d at 561 (quoting *Larsen-Ball v. Ball*, 301 S.W.3d 228, 232 (Tenn. 2010)). "When the language of a statute is clear and unambiguous, 'the legislative intent shall be derived from the plain and ordinary meaning of the statutory language.'" *Dycus*, 456 S.W.3d at 924 (quoting *State v. Wilson*, 132 S.W.3d 340, 341 (Tenn. 2004)). If the language of the statute is ambiguous, we will look at the entire statutory scheme and use the canons of statutory construction to ascertain the legislative intent. *Id.*

Where the intent of the General Assembly is unclear, we use the two-step analysis promulgated in *Blockburger v. U.S.*, 284 U.S. 299, 301-04 (1932). *Watkins*, 362 S.W.3d at 556. First, we ask "whether the convictions arise from the same act or transaction." *Id.* In answering this question, we look to "the charging instrument and the relevant statutory provisions" and "whether the charges arise from discrete acts or involve multiple victims." *Id.* If the convictions do not arise from the same act or transaction, "there cannot be a violation of [] double jeopardy" and the need for further inquiry is "obviate[d.]" *Id.* at 556-57. If the convictions do arise from the same act or transaction, then courts must "examine the statutory elements of the offenses[.]" *Id.* at 557. "[I]f each offense includes an element that the other does not, the statutes do not define the 'same offense' for double jeopardy purposes, and we will presume that the Legislature intended to permit multiple punishments." *Id.*

Defendant challenges his Rutherford County conviction on double jeopardy grounds based on the Williamson County conviction. He argues that the conduct underlying both convictions was the "same offense" for double jeopardy purposes. The State argues that Defendant's conduct underlying his Rutherford and Williamson County convictions was not the "same offense" because they did not arise from the "same act or transaction" as required by *Blockburger*. However, before we reach the *Blockburger* test, we need to first determine whether the General Assembly clearly intended to treat Defendant's conduct underlying his Rutherford County and Williamson County convictions as the "same offense." *See Watkins*, 362 S.W.3d at 556

Tennessee Code Annotated section 39-17-315(b)(1) makes it unlawful for a person to "intentionally engage[] in stalking." Code section -315(a)(4) defines "[s]talking" as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person [and actually caused the victim] to feel terrorized, frightened, intimidated, threatened, harassed, or molested." As relevant here, Code section -315(a)(1) further defines "[c]ourse of conduct" as

> a pattern of conduct composed of a series of two (2) or more separate, noncontinuous acts evidencing a continuity of purpose, including, but not limited to, acts in which the defendant directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to a person, or interferes with a person's property.

As defined, "[s]talking is a continuing offense [that] requires repeated conduct, which means two *or more* separate occasions." *State v. Vigil*, 65 S.W.3d 26, 35 (Tenn. Crim. App. 2001) (citing T.C.A. § 39-17-315(a)(2)(C)) (emphasis in original). Because of stalking's continuing nature, the question of when a defendant's "course of conduct" can be broken into two separate offenses for double jeopardy purposes has troubled courts before. *See Vigil*, 65 S.W.3d at 35-37 ("being charged with stalking a victim concludes the continuous course of conduct"); *see also State v. Hoxie*, 963 S.W.2d 737, 743 (Tenn. 1998) (entering of an order of protection against a defendant may break the continuous course of conduct); *State v. Jones*, 678 So. 2d 1336, 1338 (Fla. Dist. Ct. App. 1996) (arresting a defendant for stalking "conclude[s] the factual event which formed the basis for the arrest and began a separate and distinct factual event").

In 2005, the General Assembly answered this question by the passage of Tennessee Code Annotated section 39-17-315(k), providing

> (1) For purposes of determining if a course of conduct amounting to stalking is a single offense or multiple offenses, the occurrence of any of

the following events breaks the continuous course of conduct, with respect to the same victim, that constitutes the offense:

> (A) The defendant is arrested and charged with stalking, aggravated stalking or especially aggravated stalking;

> (B) The defendant is found by a court of competent jurisdiction to have violated an order of protection issued to prohibit the defendant from engaging in the conduct of stalking; or

> (C) The defendant is convicted of the offense of stalking, aggravated stalking or especially aggravated stalking.

> (2) If a continuing course of conduct amounting to stalking engaged in by a defendant against the same victim is broken by any of the events set out in subdivision (k)(1), any such conduct that occurs after that event commences a new and separate offense.

Under the plain language of Code section -315(k), we conclude that the General Assembly clearly intended to require "the occurrence of" one of the events specified in subsections (A) – (C) before a defendant's "continuing course of conduct amounting to stalking" directed at the "same victim" is broken into "multiple offenses" for double jeopardy purposes. *See Jennings*, 130 S.W.3d at 46. Without the "occurrence" of one of the specified events, a defendant's "continuing course of conduct amounting to stalking" directed at "the same victim" is a "single offense[.]" *See* T.C.A. § 39-17-315(k). Because we conclude that the General Assembly's language is clear, consideration of the *Blockburger* test is unnecessary. *See Watkins*, 362 S.W.3d at 556.

The State counters that Code section -315(k) is not intended to be an exhaustive list. It argues, "[A]ny of the conditions set forth in [Code section -315(k)] are sufficient to break an otherwise continuous course of stalking conduct[, b]ut nothing in [Code section 315(k)] suggests that the legislature intended any of the conditions set forth therein to be *necessary* to do so." (Emphasis in original). Yet, there is no language in Code section -315(k) that indicates that the list is anything other than an exhaustive list. In fact, it is devoid of the language generally employed by the General Assembly when it intends to create a non-exhaustive list. *See Marshall*, 319 S.W.3d at 561 (providing that the word "includes" indicates a non-exhaustive list); *see also Lovelace v. Copley*, 418 S.W.3d 1, 18 (Tenn. 2013) (providing that the phrase "including but not limited to" indicates a non-exhaustive list).

The State alternatively asserts that the legislative history of Code section -315(k) clearly indicates that the General Assembly did not intend to require both a charge of and an arrest for stalking to break a "continuous course of conduct amounting to stalking" into two "separate offenses." First, the State cites our decision in *Vigil*, 65 S.W.3d 26. In *Vigil*, a panel of this Court held that "being charged with stalking a victim breaks the continuous course of conduct underlying the charge and that subsequent following or harassing of the victim relates to a new offense." 65 S.W.3d at 37. However, because we find that Code section -315(k) is unambiguous, consideration of its legislative history is improper. *See Frazier v. State*, 495 S.W.3d 246, 249 (Tenn. 2016) ("When [the words of a statute] are clear and unambiguous, we need not consider other sources of information but must simply enforce the statute as written") (citations omitted). Therefore, we find that to the extent that they conflict, Code section -315(k), as amended in 2005, abrogated *Vigil*.

Turning to the facts of this case, Defendant argues that the conduct underlying his Rutherford County and Williamson County convictions "were a single 'continuous course of conduct'" constituting the "same offense" under Code section -315(k). We agree. The parties do not dispute that Defendant's conduct underlying his Rutherford County and Williamson County convictions constituted a "continuous course of conduct amounting to stalking" directed toward the "same victim." Therefore, the only question is whether that "continuous course of conduct" was broken by one of the specified events in Code section -315(k)(1)(A)-(C). We conclude that the continuous course of conduct was not broken because Defendant had not yet been arrested in Rutherford County for his continuing course of conduct in Williamson County – only charged. The only subsection that the parties contest as applicable is subsection (A). *See* T.C.A. § 39-17-315(k)(1)(A) (requiring an "arrest[] *and* charge[ for] stalking, aggravated stalking or especially aggravated stalking") (emphasis added). Defendant was charged in this case with aggravated stalking on October 30, 2022, based on conduct directed toward the victim on "divers[e] days in October, 2022[,]" but he was not arrested until November 1, 2022, when Williamson County law enforcement responded to the Sonic incident and arrested Defendant on *both* Rutherford County and Williamson County charges. Therefore, Defendant's "continuing course of conduct" underlying both his Rutherford County and Williamson County convictions was not broken until his arrest on November 1, 2022, rendering Defendant's conduct across both cases a "single offense" for double jeopardy purposes. *See id.* Consequently, Defendant's prosecution in this case, which took place after his guilty plea in Williamson County, violated the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution because it subjected him to "a second prosecution for the same offense after conviction[.]" *See Watkins*, 362 S.W.3d at 541. Defendant's conviction for aggravated stalking is therefore vacated.

Our determination of this issue also resolves Defendant's next issue—whether his indictment for aggravated stalking violated Tennessee Rule of Criminal Procedure 8. Rule 8(a)(1) provides,

> *Two or more offenses* shall be joined in the same indictment . . . with each offense stated in a separate count . . . if the offenses are:
>
> (A) based on the same conduct or arise from the same criminal episode;
>
> (B) within the jurisdiction of a single court; and
>
> (C) known to the appropriate prosecuting official at the time of the return of the indictment[.]

(Emphasis added). Pursuant to the plain language of Rule 8, it is only applicable where a defendant seeks joinder of "two or more offenses." *Id.* Therefore, our conclusion that Defendant's Rutherford County and Williamson County actions are the "same offense" renders Rule 8 inapplicable in this case.

Based upon the foregoing, we conclude that Defendant's conviction for aggravated stalking in this case violated the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, and we vacate Defendant's aggravated stalking conviction. Based upon our vacating of the conviction, Defendant's other issues concerning his aggravated stalking conviction may be rendered moot. However, recognizing that the parties may seek further appellate review, we will nevertheless consider Defendant's remaining issues as they relate to his conviction for aggravated stalking. *See Jacobs v. State*, 450 S.W.2d 581 (Tenn. 1970) (holding that intermediate appellate courts may not pretermit issues entirely).

*Sufficiency of the Evidence*

Defendant challenges the sufficiency of the evidence concerning his aggravated stalking conviction. He concedes that the evidence was sufficient to support his conviction for the lesser included offense of stalking, but he argues that the evidence was insufficient to enhance his conviction to aggravated stalking. Therefore, he requests this Court to reduce his aggravated stalking conviction to simple stalking. The State argues that the evidence was sufficient to support a conviction for aggravated stalking. We agree with the State.

When the sufficiency of the evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it. *See State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *See State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The standard of review for the sufficiency of the evidence is the same whether the conviction is based on direct or circumstantial evidence or a combination of the two. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

"A person commits an offense who intentionally engages in stalking." T.C.A. § 39-17-315(b)(1) (2022). As charged in this case, the stalking is aggravated if

> at the time of the offense, [the defendant] was prohibited from making contact with the victim under a restraining order or injunction for protection, an order of protection, or any other court-imposed prohibition of conduct toward the victim . . . , and the person knowingly violates the injunction, order or court-imposed prohibition.

*Id.* § -315(c)(1)(E). A person acts "knowingly with respect to the[ir] conduct or to the circumstances surrounding their conduct when the person is aware of the nature of the conduct or that the circumstances exist." *Id.* § -11-302(b).

In the light most favorable to the State, the evidence showed that on July 12, 2021, the Henry County General Sessions Court entered a temporary order of protection prohibiting Defendant from contacting the victim "either directly or indirectly, by phone, email, messages, text messages, mail, or any other type of communication or contact." On July 21, 2021, the Henry County General Sessions Court entered a separate order,

- 14 -

providing that the July 12, 2021 temporary order of protection "remain[ed] in full force and effect until further orders of this Court." On January 31, 2022, the Benton County Chancery Court provided in a separate order, "The Temporary Order of Protection filed for record July 21, 2021 . . . shall remain in full force and effect with the exception of court appearances ONLY." Defendant signed the July 21, 2021 order, and Defendant was present at the hearing that resulted in the January 31, 2022 order. The trial court further found that the January 31, 2022 order validly extended the July 21, 2021 extension of the July 12, 2021 temporary order of protection, and Detective Sagrera testified that the January 31, 2022 order was "valid on its face" when Defendant stalked the victim. This evidence is sufficient for a reasonable jury to conclude that Defendant's stalking of the victim in October 2022 was knowingly committed while he "was prohibited from making contact with [the victim]." *See id.* §§ -11-302(b), -17-315(c)(1)(E).

Defendant responds that the evidence was insufficient to show that he "knowingly" violated an order of protection because "the State introduced no evidence at all that [he] ever even *saw* any of the [] orders, much less that he understood them." (Emphasis in original). However, the record contradicts Defendant's argument. As explained above, Defendant signed the July 21, 2021 order extending the July 12, 2021 temporary order of protection prohibiting him from contacting the victim, and he was present at the hearing that resulted in the January 31, 2022 extension of the July 21, 2021 order. Defendant further complains that he "squarely testified that he did *not* [violate the orders] knowingly" and that the State failed to "debunk[]" his testimony. (Emphasis in original). However, the jury heard Defendant's testimony and was entitled to "disbelieve any or all of" it. *See State v. Millsaps*, 30 S.W.3d 364, 369 (Tenn. Crim. App. 2000).

Finally, Defendant argues that the January 31, 2022 order did not validly extend the July 21, 2021 order. Consequently, he reasons that there was no order in effect fully prohibiting him from contacting the victim when he committed the stalking in this case. However, we agree with the State that the issue of whether the January 31, 2022 order was a valid extension of the July 21, 2021 order is not properly before this Court. Defendant never objected to the admission of either order or otherwise asked the trial court to rule on their validity, so he has waived his argument on appeal as to this issue. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"). Defendant is not entitled to relief on this issue.

*Evidence of Order's Expiration*

- 15 -

Defendant next argues the trial court abused its discretion by "block[ing him] from introducing any testimony, judicial notice, or even argument about the legal fact that orders of protection expire within one year." He further alleges that the error violated his Sixth Amendment rights and was not harmless beyond a reasonable doubt. The State argues that the trial court did not abuse its discretion by finding that the evidence was irrelevant.[3] We agree with the State.

During trial, Defendant moved for the trial court to take judicial notice of and to instruct the jury on Tennessee Code Annotated sections 36-3-608(a) and -605(a). Code section -608(a) provides, "All orders of protection shall be effective for a fixed period of time, not to exceed one (1) year." Code section -605(a) provides,

> Within fifteen (15) days of service of [the ex parte order], a hearing shall be held, at which time the court shall either dissolve any ex parte order that has been issued, or shall, if the petitioner has proven the allegation of . . . stalking . . . by a preponderance of the evidence, extend the order of protection for a definite period of time, not to exceed one (1) year[.]

Defendant argued that these Code sections were relevant because the final order explicitly prohibiting Defendant from contacting the victim was entered on July 12, 2021, but the indictment charged Defendant with aggravated stalking based on conduct committed in October 2022. Consequently, Defendant concluded that the July 12, 2021 temporary order of protection prohibiting all contact with the victim had expired as a matter of law by the time he committed the offense.

The trial court asked Defendant, "Did you want [the trial court] to charge the jury as a matter of law or are you wanting to deem it admissible as fact that that statute exists?" Defendant responded, "I am not totally sure. . . . [E]ither one, I guess, would be fine. But we just want the jury told . . . as a matter of judicial notice, that these were statutes that were in effect." The State objected to the trial court taking judicial notice of the Code sections, arguing that they were irrelevant. The trial court agreed with the State and denied Defendant's motion, reasoning, "Regardless of whether Defendant believe[d]

---

[3] The State asserts that Defendant waived consideration of whether the trial court erred by not judicially noticing "the legal fact that orders of protection expire within one year." The State reasons that Defendant insufficiently briefed the issue by not identifying the statutes of which he sought judicial notice. However, Defendant identified the portion of the trial transcript where the trial court denied taking judicial notice "of the two statutes that [Defendant] cited." In the same volume of the transcript, the trial court states that it was considering "Defendant's motion for the [trial court] to take judicial notice[.]" Defendant's motion requesting judicial notice is also in the record and identifies the relevant statutes. Therefore, we conclude that Defendant's principal brief "substantially conform[s] to the requirements of the Tennessee Rules of Appellate Procedure[.]" *See* Tenn. Ct. Crim. App. R. 10(a).

that [the July 12, 2021 temporary order of protection] expired or not or whether it should have expired or not[,] the Court issued an order. And that order was in place." The trial court ruled that the January 31, 2022 order validly extended the July 21, 2021 extension of the July 12, 2021 temporary order of protection prohibiting Defendant from contacting the victim.

During the cross-examination of the victim at trial, defense counsel asked her, "[I]n your experience with orders of protection, would you agree that orders of protection generally expire after one year?" The State objected and argued that the testimony was irrelevant, and the trial court sustained the objection. Defense counsel also sought to cross-examine Detective Sagrera on whether he agreed that orders of protection expire after one year. The State objected again based on relevance, and defense counsel argued, "I feel like I am allowed to cross[-]examine him[] and confront [Defendant's] accusers[.]" The trial court sustained the State's objection once more.

In his motion for new trial, Defendant argued that the trial court "had no business barring the jury from hearing" evidence on the fact that orders of protection generally expire after one year. He argued that the evidence was relevant to "refute whether an unexpired order of protection even existed at all, [] whether [Defendant] violated the order knowingly, and [Detective Sagrera's testimony] that the order of protection was unexpired." He further asserted, "[T]o let the State introduce testimony about the order's non-expiration, but not to allow the defense to cross-examine on it" was a violation of his confrontation rights. The trial court denied Defendant's motion.

Under Tennessee Rule of Evidence 402, relevant evidence is generally admissible. "'Relevant evidence' means any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Moreover, courts are required to "take judicial notice of . . . the statutes . . . of every state[.]" Tenn. R. Evid. 201(a). The statute to be judicially noticed must also be relevant to the action. *See* Tenn. R. Evid. 402 ("Evidence which is not relevant is not admissible"); *see also Latiff v. Dobbs*, No. E2006-02395-COA-R3-CV, 2008 WL 238444, at \*8 (Tenn. Crim. App. Jan. 29, 2008). A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008) (citing *State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004); *State v. James*, 81 S.W.3d 751, 760 (Tenn. 2002)). A trial court abused its discretion when it "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." *Id.* (citing *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008)).

Defendant asserts, "If orders of protection *normally* expire after one year, then it is simply *more probable* that this particular order expired after one year." (Emphasis in original). He claims that the trial court erred by refusing to take judicial notice and disallowing cross-examination of the victim and Detective Sagrera on the fact that orders of protection generally expire after one year. However, in ruling on Defendant's motion for judicial notice, the trial court found that the July 21, 2021 extension of the July 12, 2021 temporary order of protection prohibiting Defendant from contacting the victim was validly extended by the January 31, 2022 order. Therefore, even assuming that the January 31, 2022 order expired after one year, it would still be in place when Defendant stalked the victim in October 2022. Thus, evidence that orders of protection generally expire after one year is irrelevant because it has no bearing on the validity of the January 31, 2022 extension at the time of Defendant's stalking. *See* Tenn. R. Evid. 401, 402.

Defendant also argues that Code sections 36-3-608(a) and -605(a) and the cross-examination of the victim and Detective Sagrera were relevant because they bore on the issue of whether he "knowingly" violated an order of protection by stalking the victim. However, Defendant has failed to show that he was even aware of the Code sections when he stalked the victim, so he cannot show that his subjective knowledge of the orders was affected by the Code sections. Similarly, Defendant cannot show that the victim's and Detective Sagrera's general knowledge of orders of protection affected his subjective knowledge of the orders in this case. Therefore, the trial court did not abuse its discretion by concluding that Code sections 36-3-608(a) and -605(a) and the victim's and Detective Sagrera's testimony were irrelevant. *See id.*; *see also* Tenn. R. Evid. 202, 401, 402. Defendant is not entitled to relief on this issue.

Defendant finally contends that the trial court's alleged evidentiary errors violated his confrontation rights. He explains, "[I]t violates confrontation for a judge to let the *prosecutor* delve into a certain topic, but then to bar examination by the defense into that same topic." (Emphasis in original). However, "[t]he propriety, scope, manner, and control of the cross-examination of witnesses rests within the sound discretion of the trial court." *State v. Hardison*, 680 S.W.3d 282, 315 (Tenn. Crim. App. 2023) (citing *State v. Dishman*, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995)). "Absent a clear abuse of discretion that results in manifest prejudice to the defendant, this [C]ourt will not interfere with the trial court's exercise of its discretion on matters pertaining to the examination of witnesses." *Id.* (citing *State v. Johnson*, 670 S.W.2d 634, 636 (Tenn. Crim. App. 1984)). We find that the trial court did not abuse its discretion in limiting the scope of the victim's and Detective Sagrera's cross-examinations. *See id.* Defendant is not entitled to relief on this issue.

*First Amendment*

Finally, Defendant argues that the stalking statute under which he was convicted violated the First Amendment facially and as applied. He also claims that the harassment statute under which he was convicted is fatally overbroad.[4] The State responds that neither statute violates the First Amendment either facially or as applied. Because we have already vacated Defendant's aggravated stalking conviction pursuant to the Double Jeopardy Clause and Code section -315(k), we decline to review Defendant's First Amendment challenges to his aggravated stalking conviction. *See State v. Taylor*, 70 S.W.3d 717, 720 (Tenn. 2002) ("courts do not decide constitutional questions unless resolution is absolutely necessary to determining the issues in the case and adjudicating the rights of the parties"). We otherwise agree with the State that Defendant's First Amendment challenge to the harassment statute fails.

In making his overbreadth challenge, Defendant argues that the harassment statute "violates the First Amendment because it convicts people for causing negative emotions without uttering any true threats[,]" such as when a defendant's speech "merely annoys, offends, or alarms." The State counters that the Defendant cannot show that the statute's unconstitutional applications substantially outweigh its constitutional ones.

"A statute may be challenged as overbroad when it reaches a substantial amount of constitutionally protected speech." *State v. Burkhart*, 58 S.W.3d 694, 700 (Tenn. 2001) (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982)). A statute will be held unconstitutionally overbroad "if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep." *Id.* (citing *City of Chicago v. Morales*, 527 U.S. 41, 55 (1999))

---

[4] In his reply brief, Defendant claims that he also asserted an as-applied challenge to his harassment conviction and faulted the State for only addressing his overbreadth challenge. He asserts, "[W]hile overbreadth may be relevant to look at as well, [Defendant] has focused on the unconstitutional application of the law to these allegations." We disagree.

"A constitutional challenge to a statute may be either facial or as-applied." *Fisher v. Hargett*, 604 S.W.3d 381, 396 (Tenn. 2020). "In contrast to a facial challenge, which involves the constitutionality of the statute as written, '[a]n "as[-]applied" challenge to the constitutionality of a statute is evaluated considering how it operates in practice against the particular litigant and under the facts of the instant case, not hypothetical facts in other situations.'" *State v. Crank*, 468 S.W.3d 15, 24 n.5 (Tenn. 2015) (quoting *City of Memphis v. Hargett*, 414 S.W.3d 88, 107 (Tenn. 2013).

In his principal brief, Defendant argues that the harassment statute "violates the First Amendment because it convicts people for causing negative emotions without uttering any true threats" and criminalizes speech that merely "annoy[s]. alarm[s], or frighten[s.]" These are exclusively challenges to the language of the statute itself that make no reference to the facts of Defendant's case. In other words, a challenge to the statute on its face. Therefore, insofar as he attempts to reframe his challenge to the harassment statute as an as-applied challenge for the first time in his reply brief, we find that the issue is waived. *See Morgan*, 727 S.W.3d at 198.

(internal quotations omitted). To succeed on an overbreadth challenge, the challenger must "first show that the statute challenged involves constitutionally protected conduct." *Id.* (citing *Hoffman Estates, Inc.*, 455 U.S. at 494). If he carries this first burden, he must then "'demonstrate from the text of the law and actual fact that there are a substantial number of instances where the law cannot be applied constitutionally.'" *Id.* (quoting *State v. Lyons*, 802 S.W.2d 590, 593 (Tenn. 1990)). "Application of the overbreadth doctrine . . . is, manifestly, strong medicine[,]" so courts should "employ[ it] sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973).

The harassment statute under which Defendant was prosecuted provides, "A person commits an offense who intentionally . . . [c]ommunicates with another person without lawful purpose, anonymously or otherwise, *with the intent that the frequency or means of the communication* annoys, offends, alarms, or frightens the recipient and, by this action, annoys, offends, alarms, or frightens the recipient[.]" T.C.A. § 39-17-308(a)(2) (emphasis added). From our reading of the statute's plain language, it incriminates "the frequency or means of the communication" that is intended to and actually does "annoy[], offend[], alarm[], or frighten[.]" *Id.* Consequently, the harassment statute "do[es] not regulate the *content* of speech inasmuch as the *manner* in which the communication is made." *See Purifoy v. Mafa*, 556 S.W.3d 170, 192 (Tenn. Crim. App. 2017) (considering a similar challenge to the stalking statute). Therefore, Defendant's overbreadth challenge to the harassment statute fails because he has not demonstrated an unconstitutional application of the statute. *See Burkhart*, 58 S.W.3d at 700. Defendant is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing, we vacate Defendant's aggravated stalking conviction in Count 1 and affirm his harassment conviction in Count 2. Because we vacated Defendant's conviction in Count 1, we also remand the case for entry of a corrected judgment form on Count 2, removing the condition that Count 2 merged with Count 1.

*s/Timothy L. Easter*
TIMOTHY L. EASTER, JUDGE

- 20 -